# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP373 |

| | |
|---|---|
| COMPLETE TITLE: | Derrick A. Sanders, |
| | Petitioner-Appellant, |
| | v. |
| | State of Wisconsin Claims Board, |
| | Respondent-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 404 Wis. 2d 327, 978 N.W.2d 398
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 30, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 19, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Stephen E. Ehlke |

JUSTICES:

REBECCA GRASSL BRADLEY, J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER, C.J., and ROGGENSACK, J., joined. HAGEDORN, J., filed a concurring opinion. KAROFSKY, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the respondent-respondent-petitioner, there were briefs filed by *Hannah S. Jurss,* assistant attorney general, with whom on the briefs was *Joshua L. Kaul,* attorney general. There was an oral argument by *Colin T. Roth,* assistant attorney general.

For the petitioner-appellant, there was a brief filed by *Matthew Splitek* and *Quarles & Brady LLP,* Madison. There was an oral argument by *Matthew Splitek.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP373
(L.C. No. 2020CV1016)

STATE OF WISCONSIN          :          IN SUPREME COURT

**Derrick A. Sanders,**

      **Petitioner-Appellant,**

    **v.**

**State of Wisconsin Claims Board,**

      **Respondent-Respondent-Petitioner.**

**FILED**

**JUN 30, 2023**

Samuel A. Christensen
Clerk of Supreme Court

---

REBECCA GRASSL BRADLEY, J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER, C.J., and ROGGENSACK, J., joined. HAGEDORN, J., filed a concurring opinion. KAROFSKY, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

---

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA GRASSL BRADLEY, J. In 1992, Derrick A. Sanders and two others "severely beat[]" James.[1] After the assault, Sanders's co-actors took James to another location. Sanders did not accompany them. One of the co-actors shot James in the head, killing him.

---

[1] James is a pseudonym. We use it to preserve victim privacy. See Wis. Stat. § 950.04(1v)(ag) (2021-22).

¶2 Sanders twice pled no contest to first-degree intentional homicide as party to a crime; consequently, he spent about 26 years in prison. He incorrectly believed the State could prove that charge even though he participated only in the assault. The first plea was vacated in 1995. The State brought the charge again, and Sanders entered the second plea. In 2018, the second plea was vacated.

¶3 Months later, Sanders petitioned the State Claims Board for compensation, seeking over $5.7 million. The Board awarded $25,000, the maximum under Wis. Stat. § 775.05(4) (2019-20).[2] Section 775.05(4) provides, in relevant part, "[i]f the . . . [B]oard finds that" $25,000 "is not adequate compensation it shall submit a report specifying an amount which it considers adequate to the chief clerk of each house of the legislature[.]" The Board did not find $25,000 inadequate; therefore, it did not submit a report.

¶4 Sanders sought judicial review, arguing the Board should have made a finding regarding the adequacy of $25,000. The circuit court rejected his argument, affirming the Board.[3] In a split decision, the court of appeals reversed. Sanders v. State of Wis. Claims Bd., No. 2021AP373, unpublished slip op. (Wis. Ct. App. June 9, 2022). We granted review.

---

[2] Unless otherwise indicated, all subsequent references to the Wisconsin Statutes are to the 2019-20 version.

[3] The Honorable Stephen E. Ehlke, Dane County Circuit Court, presided.

2

¶5   We reject Sanders's argument.  It is incompatible with the plain meaning of Wis. Stat. § 775.05(4).  Section 775.05(4) requires the Board to submit a report in the event that the Board finds $25,000 inadequate.  The Board did not so find. Accordingly, we reverse the court of appeals.[4]

## I.  BACKGROUND

¶6   The governing statute requires the Board to use a multiple-step process when it receives a claim.  First, the Board must hold an evidentiary hearing to determine "either that the evidence is clear and convincing that the petitioner was innocent of the crime for which he . . . suffered imprisonment, or that the evidence is not clear and convincing that he . . . was innocent."   Wis.  Stat.  § 775.05(3).   "If the . . . [B]oard finds that the petitioner was innocent and that he . . . did not by his . . . act or failure to act contribute to bring about the conviction and imprisonment for which he . . . seeks compensation," the Board proceeds to address compensation.  § 775.05(4).

---

[4] The court of appeals also suggested the Board engaged in improper ex parte communications with the Milwaukee County District Attorney's Office. Sanders v. State of Wis. Claims Bd., No. 2021AP373, unpublished slip op., ¶48 (Wis. Ct. App. June 9, 2022).  It concluded the issue needed to be explored on remand.  Id.  The State asks us to resolve this issue. Sanders does not develop an argument in response.  "An argument to which no response is made may be deemed conceded for purposes of appeal."  Waukesha County v. S.L.L., 2019 WI 66, ¶42, 387 Wis. 2d 333, 929 N.W.2d 140 (Hoffman v. Econ. Preferred Ins., 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590).  We do not address the ex parte communications issue because it has been abandoned.

¶7   As to compensation, the Board must first "find the amount which will equitably compensate the petitioner, not to exceed $25,000 and at a rate of compensation not greater than $5,000 per year for the imprisonment." Wis. Stat. § 775.05(4). Second, "[i]f the . . . [B]oard finds that the amount it is able to award is not an adequate compensation it shall submit a report specifying an amount which it considers adequate to the chief clerk of each house of the legislature[.]" Id.

¶8   In this case, the Board found Sanders was innocent of the crime for which he was imprisoned. He did not participate in the murder——only the assault. It also found he did not contribute to his conviction even though he twice pled no contest. No party challenges these findings. Sanders takes issue with the Board only for not making a finding regarding adequacy.

¶9   After the Board awarded Sanders $25,000, Sanders filed a petition for rehearing. The Board, via its Chairman, denied the petition. The denial letter explains:

> The . . . Board's decision clearly states that the [B]oard . . . voted to award compensation in the amount of $25,000. Because the Board did not conclude that the amount which it was able to award was "not adequate compensation," it is not required to submit a report to the legislature "specifying an amount which it considers adequate." Therefore, the absence of an explicit statement regarding the request for additional damages does not render the Board's decision incomplete.

¶10  The circuit court affirmed the Board, noting Sanders did not cite any "administrative rule, policy, or prior practice

4

that requires the Board to expressly address his additional damages claims in its final decision." As the court continued:

> He relies solely on the final sentence of Wis. Stat. § 775.05(4) . . . . I find Sanders'[s] reliance on this portion of the statute unpersuasive. . . . [T]he Board did not make a finding that $25,000 was inadequate compensation and it was therefore not required to take further action.

Over one judge's dissent, the court of appeals reversed and remanded to the circuit court with directions to remand to the Board. Sanders, No. 2021AP373, ¶1.

## II. STANDARD OF REVIEW

¶11 Sanders argues Wis. Stat. § 775.05(4) compels the Board to make a finding regarding adequacy. The interpretation of a statute is a question of law subject to our independent review. State v. Neill, 2020 WI 15, ¶14, 390 Wis. 2d 248, 938 N.W.2d 521 (quoting State v. Hinkle, 2019 WI 96, ¶14, 389 Wis. 2d 1, 935 N.W.2d 271).

¶12 Our rejection of Sanders's interpretation triggers another issue: Was the Board required to explain why it did not make a finding? Our consideration of this issue turns on a question of statutory interpretation and accordingly is also subject to our independent review. See id. Specifically, Wis. Stat. § 775.05(5) authorizes judicial review only of the Board's "findings and the award," so we must determine the meaning of that phrase. We assume, without deciding, that the first issue——whether the Board was required to make a finding——falls within the purview of § 775.05(5). We conclude the Board is not so required; it has discretion. Our assumption, however, does not

5

extend to the Board's exercise, or non-exercise, of this discretion.

### III. DISCUSSION

¶13 In this court's seminal 2004 decision, State ex rel. Kalal v. Circuit Court for Dane County, we confirmed textualism is the correct methodology for statutory interpretation. 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. Kalal is binding on "all Wisconsin courts"——indeed, it is "the most cited [Wisconsin] case of modern time[.]" See Daniel R. Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969, 969-70 (2017); see also State v. Hayes, 2004 WI 80, ¶104 n.1, 273 Wis. 2d 1, 681 N.W.2d 203 (Sykes, J., concurring) ("[T]he principles of statutory interpretation articulated by this court in . . . Kalal . . . [cannot] be dismissed as mere 'spirited discussions' or 'vigorous discussions' by 'part of the court.' . . . Needless to say, Kalal is binding precedent."). (emphasis added). Under this well-established textualist methodology, we begin and end with a plain-meaning analysis of Wis. Stat. § 775.05 because its text is unambiguous. See Enbridge Energy Co. v. Dane County, 2019 WI 78, ¶19, 387 Wis. 2d 687, 929 N.W.2d 572 (quoting Kalal, 271 Wis. 2d 633, ¶45).

¶14 We interpret the relevant words of the statute in accordance with their "common and approved usage"; however, "technical words and phrases and others that have a peculiar meaning in the law" are "construed according to such meaning." See Wis. Stat. § 990.01(1). To determine common and approved

6

usage, we consult dictionaries.  See State v. McKellips, 2016 WI 51, ¶32, 369 Wis. 2d 437, 881 N.W.2d 258 (citing State v. Sample, 215 Wis. 2d 487, 499-500, 573 N.W.2d 187 (1998)).  To determine the meaning of legal terms of art, we consult legal dictionaries.  State v. Schaefer, 2008 WI 25, ¶¶29-31, 308 Wis. 2d 279, 746 N.W.2d 547 (consulting Black's Law Dictionary to determine the meaning of "discovery").

¶15 We read the relevant words of the statute "in the context in which . . . [they] are used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes."  James v. Heinrich, 2021 WI 58, ¶20, 397 Wis. 2d 517, 960 N.W.2d 350 (quoting Kalal, 271 Wis. 2d 633, ¶46).  We also consider traditional canons of construction, which serve as "helpful, neutral guides" for our analysis.  Id., ¶23 n.12 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 61 (2012)).

¶16 Lastly, we consider statutory history, which can be relevant to plain meaning.  Brey v. State Farm Mut. Auto. Ins., 2022 WI 7, ¶20, 400 Wis. 2d 417, 970 N.W.2d 1 (quoting James, 397 Wis. 2d 517, ¶26); Wis. Stat. § 990.001(7) ("A revised statute is to be understood in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction.  If the revision bill contains a note which says that the meaning of the statute to which the note relates is not changed by the revision, the note is indicative of the legislative intent.").

¶17 Wisconsin Stat. § 775.05(4) states, in relevant part:

> [T]he claims board shall find the amount which will equitably compensate the petitioner, not to exceed $25,000 . . . .   If the claims board finds that the amount it is able to award is not an adequate compensation it shall submit a report specifying an amount which it considers adequate to the chief clerk of each house of the legislature[.]

The key word in Wis. Stat. § 775.05(4) is "if."  As the State argues, "[t]his case presents a straight-forward statutory interpretation question that, at base, asks whether the [l]egislature actually means 'if' when it uses the word 'if.'" "If" means "[i]n the event that" or "[o]n the condition that[.]" if, The American Heritage Dictionary (5th ed. 2011); see also if, Random House Unabridged Dictionary (2d ed. 1993) (defining "if" as "in case that" or "on condition that"); if, Funk & Wagnalls New Standard Dictionary of the English Language (1923) (defining "if" as "provided or on condition that").   For example, consider the hit song, "If You Leave," which includes the following lyrics:   "if you leave, don't look back." Orchestral Manoeuvres in the Dark, If You Leave (A&M 1986). These lyrics are not an unconditional command to never look back;  rather, they state a directive applicable upon the fulfillment of the "if" condition, which may never be satisfied. See Wisconsin Bill Drafting Manual § 2.08(2) (2023-24) ("If you are expressing a condition that may never occur, use 'if' to introduce the condition, not 'when' or 'where.'").   The directive, "don't look back," is simply irrelevant unless "you" left.   The lyrics are also not a command to decide whether to leave.

8

¶18 Applying these definitions, Wis. Stat. § 775.05(4) requires the Board to submit a report "in the event that" or "on the condition that" the Board finds $25,000 inadequate. The Board did not so find. As noted in the letter denying the petition for rehearing, "the Board did not conclude that the amount which it was able to award was 'not adequate compensation[.]'"

¶19 In contrast to the structure of the preceding subsection, Wis. Stat. § 775.05(4) does not command the Board to make a finding regarding the adequacy of $25,000. The "whole-text canon" instructs "interpreter[s] to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Brey, 400 Wis. 2d 417, ¶13 (quoting Scalia & Garner, Reading Law, at 167). The language of § 775.05(4) is notably distinct from § 775.05(3), which states: "the . . . [B]oard shall find either that the evidence is clear and convincing that the petitioner was innocent of the crime for which he . . . suffered imprisonment, or that the evidence is not clear and convincing that he . . . was innocent." The legislature could have used similar language in § 775.05(4) but did not. The differences between the two subsections inform our analysis.

¶20 Wisconsin Stat. § 775.11(3) similarly informs our analysis. The statute is closely related because it appears in the same chapter of the Wisconsin Statutes. State v. Reyes Fuerte, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773 (citing City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶24,

9

302 Wis. 2d 599, 734 N.W.2d 428). For context, § 775.11(1) provides: "Any state employee against whom charges are filed under . . . [Wis. Stat. §] 940.29, and who is subsequently found not guilty, shall be reimbursed by the state for reasonable attorney fees and costs in defending such action." Subsection (3) declares: "On receipt of such a claim the . . . [B]oard shall determine whether the claim is authorized by this section and if so shall determine the amount of attorney fees and costs incurred and shall allow such attorney fees and costs as in its judgment are reasonable." Effectively, Sanders would have us rewrite Wis. Stat. § 775.05(4) with language parallel to § 775.11(3). Specifically, Sanders presses an interpretation of § 775.05(4) that would require the Board to determine whether the amount it is able to award is not an adequate compensation, and if so, to submit a report to the legislature. The statute, however, does not say this, and "[i]t is not up to the courts to rewrite the plain words of statutes[.]" Neill, 390 Wis. 2d 248, ¶23 (quoting State v. Wiedmeyer, 2016 WI App 46, 370 Wis. 2d 187, 881 N.W.2d 805) (second modification in the original). "Rather, we interpret the words the legislature actually enacted into law." Id. (quoting State v. Fitzgerald, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165).

¶21 Sanders does not reconcile his interpretation with Wis. Stats. §§ 775.05(3) or 775.11(3) and even acknowledges, "it is true" that Wis. Stat. § 775.05(4) "does not . . . specifically direct the Board to determine whether its award is 'adequate.'" He claims, however, a fair reading of

10

§ 775.05(4) necessarily implies this direction. He first claims two words are materially the same: "equitably" and "adequate." Recall that the Board, before the report issue is even reached, must "find the amount which will <u>equitably</u> compensate the petitioner, not to exceed $25,000[.]" § 775.05(4) (emphasis added). Then, "[i]f the . . . [B]oard finds that the amount it is able to award is not an <u>adequate</u> compensation it shall submit a report[.]" <u>Id.</u> (emphasis added). Conflating the two words, Sanders argues: "the Board cannot 'find the amount which will equitably compensate' an exoneree without determining whether such an amount is adequate equitable compensation. The two questions [1] whether an amount is 'the amount which will equitably compensate the petitioner' and [2] whether the same is 'an adequate compensation' are indistinct."

¶22 The problem with this reasoning is twofold. First, we normally "presume . . . different words have different meanings." <u>Parsons v. Assoc. Banc-Corp.</u>, 2017 WI 37, ¶26, 374 Wis. 2d 513, 893 N.W.2d 212 (quoting <u>Pawlowski v. Am. Fam. Mut. Ins.</u>, 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67). The "presumption of consistent usage" canon holds, "[a] word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning." Scalia & Garner, <u>Reading Law</u>, at 170. Sanders's argument relies, by his own admission, on "equitably" and "adequate" being "indistinct." Second, under the "surplusage" canon "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." <u>James</u>, 397

11

Wis. 2d 517, ¶21 (quoting Kalal, 271 Wis. 2d 633, ¶46; citing Scalia & Garner, Reading Law, at 174). As the State argues:

> [I]f "equitably compensate" were the same as "adequate compensation," then how could the . . . Board ever simultaneously determine that an amount within the statutory maximum is indeed "equitabl[e] compensat[ion] (as it is required to do . . . ) while also choosing to affirmatively find that the amount it awarded as "equitabl[e] compensate[ion]" was "not an adequate compensation" and submit a report? Put differently, if the inquiries were one-and-the-same, then the . . . Board's submitting a report to the [l]egislature would necessarily mean that its award was not "equitabl[e] compensat[ion]."

Under Sanders's interpretation, the Board's initial determination that the statutory maximum is "equitable compensation"——and, inherently, adequate——effectively prevents it from ever concluding that amount is inadequate. For this reason, Sanders cannot overcome the presumption that different words have different meanings.

¶23 Sanders also misunderstands the "predicate act" canon, which holds, "[a]uthorization of an act also authorizes a necessary predicate act." Scalia & Garner, Reading Law, at 192. For example, "permission to harvest the wheat on one's land implies permission to enter the land for that purpose." Id. According to Sanders:

> The final sentence of . . . [Wis. Stat. §] 775.05(4) tells the Board what it must do "if" it finds that "the amount it is able to award is not an adequate compensation." . . . [A] necessary predicate of the Board's making——or even declining to make——that finding is a prior determination whether the Board's award is adequate.

12

Problematically for Sanders, no one suggests the Board is not authorized to make a finding regarding adequacy. Sanders would turn authorization into a command. For this reason, the canon does not aid his proffered interpretation. As Sanders candidly concedes, the canon is "not on all fours."

¶24 Lastly, Sanders advances an unpersuasive statutory-history argument. In 1913, the legislature enacted the following:

> If the board shall find that the petitioner was innocent of the crime or offense for which he has suffered imprisonment, and that he did not by his act or failure to act contribute to bring about the conviction and imprisonment for which he seeks compensation, the board shall proceed to find the amount which will compensate the petitioner for his wrongful imprisonment. Such board may award a compensation to the petitioner so found innocent of not to exceed five thousand dollars in any case, and at a rate of compensation not greater than fifteen hundred dollars per year for the imprisonment so unjustly suffered. If the board shall find that the amount they may be able to award will not be an adequate compensation to the petitioner they shall report an amount to the legislature which they shall deem to be adequate and shall recommend the appropriation by the legislature to the petitioner of the amount in excess of the amount they may have awarded.

§ 4, ch. 189, Laws of 1913 (emphasis added).

¶25 Sanders construes relevant amendments as merely stylistic, suggesting we should infer the plain meaning of Wis. Stat. § 775.05(4) by considering the language of its predecessor. In his view, the predecessor board (a different entity than the Board) was first required to find the total amount of money the petitioner would need to be compensated——

13

without regard to a statutory maximum. If the amount needed were more than the statutory maximum, that amount, he claims, would be necessarily inadequate, thereby requiring a finding and report.

¶26 The 1913 statute did not require the board to make a finding regarding the adequacy of the statutory maximum compensation. It used conditional language, like the current statute. In this case, statutory history does not affect our plain-meaning analysis.

¶27 Next, we consider whether the Board was required to explain why it did not make a finding regarding adequacy. Sanders is entitled to judicial review under Wis. Stat. ch. 227, which governs administrative procedures and review; however, Wis. Stat. § 227.03(5) provides, "[t]his chapter does not apply to proceedings of the . . . [B]oard, except as provided in [Wis. Stats. §§] 775.05(5), 775.06(7) and 775.11(2)." We therefore examine § 775.05(5), the only applicable statute among the enumerated exceptions.

¶28 Wisconsin Stat. § 775.05(5) does not subject all aspects of the Board's decision-making process to judicial review; rather, it states: "The . . . [B]oard shall keep a complete record of its proceedings in each case and of all the evidence. The findings and the award of the . . . [B]oard shall be subject to review as provided in ch. 227." Section 775.05(5) states an exception to the general exclusion of Board proceedings articulated in Wis. Stat. § 227.03(5). Under that

14

exception, we may review only the Board's "findings" and "the award."

¶29 As used in Wis. Stat. § 775.05(5), "findings" is a legal term of art——it is a "word[]" with "a peculiar meaning in the law[.]" Wis. Stat. § 990.01(1). "Findings" is synonymous with "finding[s] of fact." finding, Black's Law Dictionary (11th ed. 2019). A "finding of fact" is "[a] determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record[.]" Id. at finding of fact; see also finding of fact, Mellinkoff's Dictionary of American Legal Usage (1992) ("[A] determination by the jury, or by a judge in a case tried without a jury, that the evidence proves that something is a fact."). For example, the phrase "finding of fact" is used appropriately in the following sentence: "[H]e agreed with the jury's finding of fact that the driver did not stop before proceeding into the intersection[.]" finding of fact, Black's Law Dictionary. A "finding of fact" is capable of being reviewed on appeal to determine whether "substantial evidence in the record" supports its validity. See Wis. Stat. § 227.57(6).

¶30 Although the word "finding" is sometimes used in an informal manner to refer to non-factual determinations, the word was not so used in Wis. Stat. § 775.05(5). Wisconsin Stat. § 775.06 is a closely-related statute; it appears in the "same chapter" (indeed, it immediately follows § 775.05), and it uses "similar terms." See Reyes Fuerte, 378 Wis. 2d 504, ¶27 (citing CC Midwest, Inc., 302 Wis. 2d 599, ¶24). Additionally, Wis. Stat. § 227.03(5) cross-references both statutes as exceptions

15

to the general exclusion of Board proceedings from judicial review.  Cf. id. (explaining statutes are closely related if one references the other (citing CC Midwest, Inc., 302 Wis. 2d 599, ¶24)).  For context, § 775.06(1) provides:

> The . . . [B]oard shall hear petitions from law enforcement officers employed by the state who have judgments against them for damages caused while in their line of duty where they acted in good faith and who have incurred charges for counsel fees and costs in defending said action.

Subsection (7) says:  "The . . . [B]oard shall keep a complete record of its proceedings in each case and of all the evidence.  The findings, conclusions, determination and award shall be subject to review as provided in ch. 227."  Under the surplusage canon, discussed above, "findings" is not synonymous with "conclusions" or the "determination."  See James, 397 Wis. 2d 517, ¶21 (quoting Kalal, 271 Wis. 2d 633, ¶46; citing Scalia & Garner, Reading Law, at 174).  While § 775.06(7) authorizes judicial review of "conclusions" and the "determination," § 775.05(5) does not.  Section 775.05(5) is narrower in scope, indicating "findings" is used in its formal, legal sense.

¶31 Under the text of Wis. Stat. § 775.05(4), "the award" is the "[c]ompensation awarded" by the Board.  The report is not a part of "the award," because the statute provides for the filing of a report if "the amount" the Board is "able to award is not an adequate compensation."  § 775.05(4); see also Wis. Stat. § 20.505(4)(d) ("A sum sufficient for payments of award made by the . . . [B]oard . . . under . . . [§] 775.05(4)[.]").

16

¶32 We conclude the Board's decision not to make a non-required finding regarding adequacy is not a "finding" in the legal sense of the word as used in the statute. See Wis. Stat. § 775.05(5). It is not possible to apply a substantial evidence standard to the Board's exercise or non-exercise of its discretion because the Board did not determine the truth or falsity of a fact in declining to make a finding regarding adequacy. Additionally, this exercise or non-exercise of discretion does not impact "the award"——only whether to submit a report, which is not a part of "the award[.]" See id. Accordingly, the Board's exercise or non-exercise of its discretion in this regard is not subject to judicial review.

## IV. THE CONCURRENCE

¶33 The concurrence author does not join any part of our opinion——not even those portions with which he agrees. "[I]t is this court's function to develop and clarify the law." State ex rel. Wis. Senate v. Thompson, 144 Wis. 2d 429, 436, 424 N.W.2d 385 (Wis. 1988) (citations omitted). Without cause, the concurrence author deprives the people of precedent on a novel issue, preferring instead to act as a court of one.

¶34 The concurrence discusses only two portions of our opinion in explaining the author's decision to deny this opinion precedential value. First, the concurrence discusses the meaning of the word "findings." According to the concurrence, our opinion "reaches beyond the issues raised by the parties and addresses the reviewability of findings in this statutory scheme." Concurrence, ¶50. The concurrence is wrong.

17

¶35 Sanders argued, "[r]eversal and remand are necessary so the Board can exercise its discretion." He claims, like the dissent, that the Board erroneously exercised its discretion by not documenting its decision-making process. In response, the Board argues certain aspects of its decision making are not subject to judicial review. Specifically, it argues a court may review only: "(1) its decision about whether a claimant has demonstrated by clear and convincing evidence that he was innocent . . . ; and (2) its decision about the amount of equitable compensation, not to exceed $25,000."

¶36 Although we adopt a slightly different rationale than the Board's argument, any suggestion that we have deviated significantly from the parties' presentation of this case is false. The concurrence misunderstands either the parties' arguments or the party presentation principle. Regardless, "[w]e sit here to decide the law as we find it, and not as the parties or others may have supposed it to be." Wis. Jud. Comm'n v. Woldt, 2021 WI 73, ¶66, 398 Wis. 2d 482, 961 N.W.2d 854 (Rebecca Grassl Bradley, J., concurring/dissenting) (quoting Ross v. Bd. of Outagamie Cnty. Supervisors, 12 Wis. 26, 44 (1860) (Dixon, C.J., dissenting)). "In a legal system in which appellate opinions not only establish the meaning of law, but do so through precedent that binds future litigants, courts cannot cede to the parties control over legal analysis." St. Augustine Sch. v. Taylor, 2021 WI 70, ¶103, 398 Wis. 2d 92, 961 N.W.2d 635 (Rebecca Grassl Bradley, J., dissenting) (quoting Amanda Frost, The Limits of Advocacy, 59 Duke L.J. 447, 453 (2009)). This

18

court has a duty to independently research, analyze, and interpret the law on behalf of the nearly 6 million people of Wisconsin. See State v. Alexander, 2015 WI 6, ¶83, 360 Wis. 2d 292, 858 N.W.2d 662 (Gableman, J., concurring) ("[I]t is axiomatic that this court is not bound by the issues presented or the arguments made by the parties.").

¶37 Strict application of the party presentation principle is especially unsuited for the Wisconsin Supreme Court. This court is not a lower court; it serves a law-developing function. State v. Grawien, 123 Wis. 2d 428, 432, 367 N.W.2d 816 (Ct. App. 1985) ("The Wisconsin Supreme Court, unlike the court of appeals, has been designated by the constitution and the legislature as a law-declaring court. While the court of appeals also serves a law-declaring function, such pronouncements should not occur in cases of great moment." (internal citation omitted)); see also State v. Herrmann, 2015 WI 84, ¶154, 364 Wis. 2d 336, 867 N.W.2d 772 (Ziegler, J., concurring) ("Unlike a circuit court or the court of appeals, the supreme court serves a law development purpose[.]"). The concurrence's application of this non-binding principle would turn this court into a circuit court, "consign[ing] the state's highest court to selecting winners and losers in litigation rather than declaring law." St. Augustine Sch., 398 Wis. 2d 92, ¶105.

¶38 Ironically, the concurrence deviates from the party presentation principle in this very case. As the dissent points out, the Board "concede[d]"——in very explicit terms——that it

19

should lose under the 1913 statute. See dissent, ¶71. Under a strict application of the party presentation principle, Sanders should prevail unless we are willing to declare that subsequent amendments were substantive. Recognizing the Board's error, the concurrence properly deviates from the principle. The concurrence author has deviated from the principle in other cases as well. See, e.g., 5 Walworth, LLC v. Engerman Contracting, Inc., 2023 WI 51, __ Wis. 2d __, __ N.W.2d __ (overruling a decision of this court even though no party asked this court to do so); Friends of Frame Park, U.A. v. City of Waukesha, 2022 WI 57, 402 Wis. 2d 1, 976 N.W.2d 263 (majority/lead op.) (adopting an argument neither party advanced in order to overrule a long line of court of appeals decisions).

¶39 The concurrence's claim that the definition of "findings" is unnecessary to resolve this case is also difficult to follow. Concurrence, ¶50. The concurrence appears to agree the Board has discretion to make or not make a finding. Discretionary decisions typically are subject to judicial review. Accordingly, some discussion as to why this particular exercise of discretion is not subject to review is warranted, particularly because Sanders argues the Board erroneously exercised its discretion.

¶40 The concurrence also declines to join this opinion's critique of the dissent. The concurrence declares the dissent's analysis is a "well-reasoned, good-faith reading of the statute" ostensibly not rooted in "public policy." Id., ¶52. The concurrence does not, however, explain why the dissent is wrong

20

or address the irrelevancy of the dissent drawing comparisons between the amount of compensation available under Wisconsin's law versus other states' statutes. The dissenters believe policy is a legitimate consideration in conducting a statutory analysis. In other cases, the dissenters have quite clearly advocated for a so-called "holistic approach" to statutory interpretation. See, e.g., Clean Wis., Inc. v. DNR, 2021 WI 71, ¶41, 398 Wis. 2d 386, 961 N.W.2d 346 (Dallet, J., concurring). The dissent's focus on, for example, the amount of compensation available in New Hampshire to the wrongfully convicted makes much more sense in the context of the dissenters' other separate writings. See dissent, ¶56 n.1. The concurrence's unwillingness to critique an anti-textual analysis does not.

¶41 On a final note, the concurrence characterizes our response as "overly emphatic[.]" Concurrence, ¶51. If the concurrence means to suggest our analysis of important legal issues is thorough, we take it as a compliment. If the concurrence disagrees on the legal principles presented, we would welcome a discourse but the concurrence does not cite any law or even secondary sources to support its position.

## V. THE DISSENT

¶42 The dissent would hold the Board is "require[d] . . . to make an adequacy determination when the Board awards the $25,000 maximum despite a wrongly imprisoned petitioner's request for more." Dissent, ¶55. Alternatively, for the sake of argument, the dissent would hold, "[t]he choice to refrain from determining adequacy is . . . a discretionary

21

choice." Id., ¶75. Either way, the dissent faults the Board for not "document[ing] and explain[ing]" its decision. Id., ¶76.

¶43 The dissent's conclusions are grounded in public policy, not law. The dissent begins with what it mischaracterizes as "context" for "determin[ing] whether . . . [the Board] fulfilled its statutory duty in Sanders' case." Id., ¶58. The dissent derives "context" not from the statutory text but from its own policy preferences. The dissent's "context" consists of the following complaint: "Wisconsin is lagging far behind" the other 38 states that have created compensation schemes for the wrongfully convicted. Id., ¶56 (citation omitted). Wisconsin "currently has the lowest per year compensation cap at $5,000 and the second lowest total compensation cap at $25,000." Id. (citation omitted). "Only New Hampshire's total compensation cap is lower, at $20,000." Id., ¶56 n.1 (citation omitted). "The difference between Wisconsin's cap and those in other states is significant." Id., ¶57. The dissent then imbues its interpretation of the statutory text with its subjective view of "common sense," but unambiguous statutes are not empty vessels to be filled with judicial sensibilities. See id., ¶¶69, 81. In claiming the court's analysis will "shield[] the Board from [judicial] review," "incentivize[]" the Board to act unscrupulously, and "allow[] the Board to add insult to injury," the dissent makes a policy argument about what the statute should say, not a

22

textualist argument about what the statute actually says. See id., ¶¶81 n.8, 85.

¶44 Although the dissent's public policy discussion is interesting, it has no relevance to the legal questions presented in this case, regardless of the number of years Sanders spent in prison. Courts decide what the law is, not what it should be. In the course of executing this judicial function, we neither endorse nor condemn the legislature's policy choices.

¶45 Following the dissent's policy discussion, it commits multiple analytical errors in interpreting the statutory text. First, it conflates the Board's mandatory duty to submit a report upon a finding of inadequacy with a non-existent duty to make a finding regarding adequacy. Repeatedly, the dissent emphasizes the statute uses "mandatory language"——"it shall submit a report"——but the dissent overlooks the conditional nature of the words preceding the mandatory language. See, e.g., id., ¶¶54, 67. The mandatory language becomes operative only if the condition——a finding of inadequacy——is fulfilled.

¶46 Second, the dissent interprets the word "findings" beyond its generally accepted legal meaning:

> "[F]inding" is often used . . . to mean a decision or a determination. See Find, American Heritage Dictionary (5th ed. 2022) ("To come to a legal decision or verdict."). Wisconsin Stat. § 775.05 uses "find" in this general sense . . . . As such, there is no indication in the statute that the word "finding" in . . . § 775.05(5) was meant in a limited sense to exclude some types of decisions, rather than

23

as a general synonym for "decision" or "determination."

Id., ¶27. As a preliminary matter, the dissent incorrectly cites a non-legal dictionary for a legal definition. Legal precision favors using legal dictionaries for defining legal concepts embedded in laws. Additionally, the legislature generally does not use "synonyms." See Wisconsin Bill Drafting Manual, § 2.04(5) ("Avoid using synonyms. Use different words for different meanings and the same word when the same meaning is intended."). By interpreting "finding" to be synonymous with various other phrases, the dissent would subject all aspects of the Board's decision making to judicial review. In so doing, the dissent's interpretation effectively amends Wis. Stat. § 227.03(5) as follows: "This chapter does not apply to proceedings of the . . . [B]oard, except ~~as~~ for claims filed under ~~provided in~~" § 775.05. We do not have the power the dissent would usurp from the legislature.

¶47 Lastly, the dissent suggests Wis. Stat. § 775.06 is not a closely-related statute because it references "findings, conclusions, determination, and award," whereas Wis. Stat. § § 775.05(5) uses only the phrase "findings and the award[.]" See dissent, ¶80 n.7. If the dissent's view were correct, few if any statutes would be closely related, and we would interpret a statute "in isolation[.]" James, 397 Wis. 2d 517, ¶20 (quoting Kalal, 271 Wis. 2d 633, ¶46). This court has repeatedly rejected such a cramped construction of statutes. Id. (quoting Kalal, 271 Wis. 2d 633, ¶46).

24

## VI.  CONCLUSION

¶48 The people have not given this court the power to "second-guess" the legislature's policy choices. Johnson v. WEC, 2021 WI 87, ¶3, 399 Wis. 2d 623, 967 N.W.2d 469. "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." Kalal, 271 Wis. 2d 633, ¶44. "While textualism cannot prevent the incursion of policy preferences into legal analysis . . . without textualism, such encroachment is certain." Friends of Frame Park, U.A. v. City of Waukesha, 2022 WI 57, ¶96, 403 Wis. 2d 1, 976 N.W.2d 263 (Rebecca Grassl Bradley, J., concurring) (quoting Woldt, 398 Wis. 2d 482, ¶92). The court of appeals majority "grafted onto . . . [Wis. Stat. § 775.05(4)] a process the legislature has not sanctioned"; accordingly, its conclusions——and the dissent's——"are contrary to policy choices made by the legislature." Sanders, No. 2021AP373, ¶56 (Fitzpatrick, J., dissenting) (citing Mayo v. Wis. Injured Patients & Fams. Comp. Fund., 2018 WI 78, ¶¶26, 40, 383 Wis. 2d 1, 914 N.W.2d 678).

*By the Court.*——The decision of the court of appeals is reversed.

25

¶49 BRIAN HAGEDORN, J. *(concurring)*. After the Claims Board awarded Derrick Sanders the statutory maximum of $25,000, Wis. Stat. § 775.05(4) required the Board to submit a report to the legislature if the Board found the award inadequate. No report was submitted. Sanders maintains the Board erred because it did not explain why the award to Sanders was adequate. The statute is only triggered, however, <u>if</u> the Board finds the amount of the award inadequate. If the Board does not find the amount inadequate, there is no statutory mandate to explain why it decided against making a finding that § 775.05 does not require the Board to make. I agree with the lead opinion's statutory analysis explaining why this is so, reasoning that largely mirrors Judge Fitzpatrick's dissent at the court of appeals.

¶50 The lead opinion goes further, however. It reaches beyond the issues raised by the parties and addresses the reviewability of findings in this statutory scheme. Because this discussion is not necessary to resolve the dispute, was not briefed, and could have wider implications, I believe it would be unwise to address that issue authoritatively in this case.

¶51 The lead opinion answers with an extended discussion of the party presentation principle for reasons I do not understand. Every member of the court agrees that sometimes our case-deciding, law-clarifying function requires us to go beyond the precise contours of the parties' legal arguments. A majority of this court——and as far as I am aware, almost every court in the country——also agrees we usually should not do so,

1

particularly when resolving a case does not require it. That is the case here. Therefore, the lead opinion's overly emphatic response to a rather standard judicial decision-making principle makes little sense.

¶52 Additionally, the lead opinion engages in a lengthy critique of the dissent for allegedly rooting its conclusions in public policy rather than law. While I reject an approach to statutory interpretation that incorporates one's preferred policy outcome, I simply do not see that in the dissent's analysis. The briefing on both sides of this case was excellent, and in my view, the dissent presents a well-reasoned, good-faith reading of the statute. Sometimes judges endeavoring to faithfully interpret statutes disagree; no nefarious motive need be invoked. Although I disagree with the dissent's analysis, the critique by the lead opinion misses the mark.

¶53 For these reasons, I respectfully concur.

¶54 JILL J. KAROFSKY, J. *(dissenting).* Derrick Sanders wrongfully spent 26 years imprisoned for a homicide that he did not commit. Because he was wrongly imprisoned by the State, the Wisconsin Claims Board awarded him $25,000, the statutory maximum that the Board itself is authorized to award from its appropriation fund. Wisconsin Stat. § 775.05(4) says that "[i]f the claims board finds that the amount it is able to award is not an adequate compensation it shall submit a report specifying an amount which it considers adequate to the chief clerk of each house of the legislature . . . ." Despite this directive, the Board said nothing about whether or not the $25,000 award was adequate to compensate Sanders for his 26 years of imprisonment, nor did the Board submit a report to the legislature. Yet a majority of this court holds that the Board did everything it was required to do under the statute. This holding transforms the mandatory language of the statute into a mere suggestion and erroneously shields the Board from judicial review. As such, I respectfully dissent.

¶55 I begin with a brief history of Wisconsin's practice of compensating innocent people who were wrongly imprisoned by the State. I then provide some necessary factual background. Next, I look to Wis. Stat. § 775.05(4) and explain how the statute requires the Board to make an adequacy determination when the Board awards the $25,000 maximum despite a wrongly imprisoned petitioner's request for more. Finally, I explain how the Board's failure to explain and document its decision

1

allows it to evade review, contrary to Wis. Stat. § 775.05(5) and Wis. Stat. ch. 227.

## I. HISTORY

¶56 In 1913, Wisconsin was first off the starting blocks in compensating innocent people wrongfully imprisoned by the state. Shelley Fite, Compensation for the Unjustly Imprisoned: A Model for Reform in Wisconsin, 2005 Wis. L. Rev. 1181, 1182 (2005). Since then, thirty-eight states and the federal government have followed in our tracks. See The National Registry of Exonerations, Compensation by the Numbers: State Statutory Compensation (Apr. 6, 2023), https://perma.cc/N9RC-9EZM. Now, despite once leading the pack in compensating individuals for the "sacrifices which the state imposes on [them] for the public purpose of punishing crime," Wisconsin is lagging far behind. See John H. Wigmore, The Bill to Make Compensation to Persons Erroneously Convicted of Crime, 3 J. Am. Inst. Crim. L. & Criminology 665, 665 (1913). This state currently has the lowest per year compensation cap at $5,000 and the second lowest total compensation cap at $25,000.[1] The National Registry of Exonerations, Compensation Statutes: A National Overview (June 2, 2022), https://perma.cc/6XRD-PT6D.

¶57 The difference between Wisconsin's caps and those in other states is significant. The majority of states compensating for wrongful conviction provide at least $50,000 per year of wrongful imprisonment, ten times Wisconsin's per-

---

[1] Only New Hampshire's total compensation cap is lower, at $20,000. N.H. Rev. Stat. § 541-B:14.

2

year cap. Innocence Project, Key Provisions in Wrongful Conviction Compensation Laws (May 27, 2022), https://perma.cc/39LX-7EJJ. Even setting aside comparisons to other states, the total compensation cap set by Wisconsin legislators in 1913 ($5,000), adjusted for inflation, translates to more than $150,000 in today's dollars, six times the current cap of $25,000. See Bureau of Labor Statistics, Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (accessed Apr. 21, 2023).

¶58 However, these low caps do not serve as an absolute ceiling. Section 775.05(4) includes an escape hatch which instructs the Board to submit a report to the legislature if the maximum allowable award is inadequate compensation for a wrongfully convicted petitioner. See Wis. Stat. § 775.05(4). Within this context, we examine the Board's decision to determine whether it fulfilled its statutory duty in Sanders' case.

## II. BACKGROUND

¶59 The lead opinion minimizes the fact that Sanders wrongfully spent 26 years in prison, while emphasizing that Sanders participated in an earlier battery of the victim——a crime that Sanders was not convicted of and a fact that is irrelevant to our review of the Board's decision. In order to clarify which facts are relevant to our review, I provide a brief summary of the Board's decision here.

¶60 In 2018, the Circuit Court for Milwaukee County vacated Sanders' conviction for first-degree intentional

3

homicide. After 26 years in prison, Sanders walked free. Subsequently, Sanders petitioned the Board for compensation, seeking around $530,000 for lost wages and assets, and around $5.2 million in lost earning potential.[2] The Milwaukee County District Attorney's Office did not oppose the petition.

¶61 The Board made two determinations. First, it determined that Sanders had shown by clear and convincing evidence that he was innocent and did not contribute to his conviction. Second, it decided to award Sanders $25,000, less than $1,000 per year of wrongful imprisonment.

¶62 The Board offered a detailed rationale for its determination that Sanders was innocent. It explained that a court had found that there was no factual basis for Sanders' no contest plea to first-degree intentional homicide. It noted that Sanders consistently maintained he had not been involved in the homicide, and that one of the men actually involved in the homicide had signed a statement that Sanders was neither present nor involved. The Board additionally explained that the "unique facts" of the case showed that Sanders had not contributed to his own conviction, despite his no contest plea. Specifically, Sanders had always maintained his innocence, sought a plea withdrawal, and met the high legal standard to merit withdrawal.

---

[2] In his hearing before the Board, Sanders explained that "I'm not trying to say I would have earned $5 million, what I'm saying is compensation due to . . . the precedent that I've been seeing . . . ." Sanders then referenced two prior cases before the Board, one in which a petitioner received $7.5 million after being wrongfully imprisoned for 24 years, and another in which a petitioner received $13 million after being wrongfully imprisoned for 13 years.

4

¶63 By contrast, the Board provided zero rationale for its decision to award Sanders the statutory maximum without requesting more from the legislature. The Board merely restated that Sanders was innocent of the crime for which he was convicted, and that "[a]ccordingly, the Board further concludes that compensation in the amount of $25,000 shall be awarded" from its appropriation fund. We do not know whether the Board considered Sanders' role in the beating of the victim prior to the crime. We do not know whether the Board considered Sanders' factually unsupported no contest plea. We do not know whether the Board considered how Sanders' case compared with those wrongfully convicted petitioners who were awarded millions of dollars. We do not even know whether the Board considered adequacy at all or whether it ceased consideration of the case upon awarding the statutory maximum from the appropriation fund. The reality is that we do not know anything about the Board's rationale for not sending a report to the legislature.

¶64 Having established the relevant background, I turn to Wis. Stat. § 775.05 and explain why the Board was required to document and explain its decision regarding the adequacy of the award.

### III. ANALYSIS

¶65 Wisconsin Stat. § 775.05 requires the Board to (1) determine whether or not its award to Sanders was adequate; and (2) provide at least some rationale for its determination so that a court may review its determination under Wis. Stat. ch. 227. See Wis. Stat. § 775.05(4)-(5). The Board failed to meet

both of these requirements. Therefore, the Board's action should be reversed and remanded with instructions to correct that failure. I discuss each of these points in turn below.

A. The Board Must Determine Adequacy.

¶66 The text and history of Wis. Stat. § 775.05(4) make it clear that the Board was required to determine whether or not its award to Sanders was adequate. The relevant portion of Wis. Stat. § 775.05(4) reads as follows:

> If the claims board finds that the petitioner was innocent . . . the claims board shall find the amount which will equitably compensate the petitioner, not to exceed $25,000 and at a rate of compensation not greater than $5,000 per year for the imprisonment . . . . _If the claims board finds that the amount it is able to award is not an adequate compensation it shall submit a report_ specifying an amount which it considers adequate to the chief clerk of each house of the legislature . . . .

Wis. Stat. § 775.05(4) (emphasis added).

¶67 The statute uses the mandatory language "shall," requiring the Board to report to the legislature if it "finds the amount it is able to award is not an adequate compensation." Wis. Stat. § 775.05(4). In order to comply with this requirement, the Board must first determine whether or not the amount it is able to award is adequate. Because an award is either adequate or it is not, the word "if," coupled with the report requirement, sets up a binary decision tree with two options. Option 1: the Board decides that the award is adequate, so it is not required to submit a report to the legislature. Option 2: the Board decides that the award is

6

inadequate, so it is required to submit a report to the legislature.

¶68 The lead opinion relies almost entirely on the proposition that the word "if" creates a third option for the Board, and allows the Board to entirely refrain from determining whether or not the award is adequate. This reading of the statute strains credulity. By the lead opinion's logic, Wis. Stat. § 775.05 includes a mandatory requirement that the Board submit a report to the legislature if it finds that the maximum award is inadequate. But it simultaneously allows the Board to avoid that requirement at whim regardless of the adequacy or inadequacy of the award.

¶69 The lead opinion's foray into 80s pop music illustrates the absurdity of its position. The "if" condition presented by the lyrics "if you leave" creates two options: leave or stay. It is unlikely that any listener of sound mind would determine that the singer was also presenting a third choice: refuse to decide whether to stay or leave and instead exist in some bizarre metaphysical state outside of staying or leaving. The same is true of the statute. There are two options——the award is adequate or it is inadequate——and the lead opinion treads outside the bounds of common sense in determining there is a third option.

¶70 Returning from the lead opinion's musical interlude, I now turn to the statutory history of Wis. Stat. § 775.05(4), which confirms that the Board is required to determine whether

7

its award is adequate. The 1913 version of the statute read, in pertinent part, as follows:

> If the board shall find that the petitioner was innocent . . . the board shall proceed to find the amount which will compensate the petitioner for his wrongful imprisonment. Such board may award a compensation to the petitioner so found innocent of not to exceed five thousand dollars in any case, and at a rate of compensation not greater than fifteen hundred dollars per year for the imprisonment so unjustly suffered. If the board shall find that the amount they may be able to award will not be an adequate compensation to the petitioner they shall report an amount to the legislature which they shall deem to be adequate . . . .

Section 3203a(4), ch. 189, Laws of 1913.

¶71 It is clear that the 1913 statute first required the Board to find the amount that would compensate the petitioner for the time spent wrongfully imprisoned, and then separately enabled the Board to award up to the statutory maximum. The Board concedes as much. The fact that a subsequent 1935 revisor's bill condensed this language and combined the first two sentences together did not change the Board's duty to determine the correct amount of compensation.

¶72 "A revisor's bill ordinarily does not result in a change in the meaning of the statutes revised," and it did not result in a change in meaning here. S. Milwaukee Sav. Bank v. Barrett, 2000 WI 48, ¶37, 234 Wis. 2d 733, 611 N.W.2d 448; see also Wis. Stat. § 990.001(7) ("If the revision bill contains a note which says that the meaning of the statute to which the note relates is not changed by the revision, the note is indicative of the legislative intent."). The revisor's bill in

8

question noted that its purpose was to "make the statutes more clear, concise, and compact," rather than make substantive changes, and that "[t]he absence of a note to any section of the bill means that only verbal changes [were] intended." 1935 S.B. 75 (directing the reader to see the first note in 1935 S.B. 50); 1935 S.B. 50. There was no note appended to the section at issue here, and therefore no substantive change was intended. The 1913 and 1935 statutes required the Board to determine the amount that will compensate the petitioner, regardless of the statutory maximum, and the statute continues to do so in its current form.

¶73 In analyzing the statutory history, the lead opinion misses the point. It focuses on the 1913 statute's conditional statement, while ignoring the requirement that "the board shall proceed to find the amount which will compensate the petitioner for his wrongful imprisonment." The act of "find[ing] the amount which will compensate" a person necessarily implies some determination of how much is required to appropriately recompense the person for the loss suffered. See "Compensate," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/compensate (last visited June 23, 2023) ("to make an appropriate and usually counterbalancing payment to" (emphasis added)). Necessarily, in deciding the proper amount of compensation, the Board has already determined the adequacy of the amount it is statutorily able to award.[3]

---

[3] This determination is a matter of simple math: is the amount which will compensate the petitioner greater than the amount the statute allows the Board to award?

9

¶74 It is not surprising, therefore, that the Board conceded that the 1913 version of the statute required it to determine how much would compensate the petitioner, regardless of the statutory maximum. Where the Board goes wrong, of course, is in arguing that a revisor's bill made substantive changes to that requirement, when the revisor's bill made explicit that there were no substantive changes.

¶75 As explained, the text and history of the statute make clear the Board was required to determine whether or not its award would adequately compensate Sanders. But even if we were to assume the lead opinion's reading of the statute is correct——and the Board is allowed to refrain from determining whether the award is adequate——the Board is still required to make a determination that it must document and explain. The choice to refrain from determining adequacy is still a discretionary choice.[4] Under either reading, the statute requires the Board to exercise its discretion in making a decision, and (as the next section explains) document the rationale behind the decision.

---

[4] An example of when the Board arguably made such a determination is when it decided not to submit a report to the legislature on behalf of a petitioner because "a legislative committee [was] presently considering a range of issues concerning innocent convicts. The committee may make recommendations on the issue of compensation for innocent convicts." State of Wisconsin Claims Board, Decisions re: December 2, 2004 hearings (Dec. 14, 2004), https://claimsboard.wi.gov/Documents/Decision_Conv_2004-12-02%20Avery,%20Steven.pdf.

B. The Board Must Document Its Decision-Making Process.

¶76 Having established that Wis. Stat. § 775.05 requires the Board to determine whether or not its award is adequate, regardless of the statutory maximum, I now turn to the requirement that the Board must document and explain that decision.

¶77 The Board's decisions regarding compensation for wrongfully convicted petitioners are subject to judicial review "as provided in ch. 227."[5] Wisconsin Stat. § 775.05(5) provides that the Board "shall keep a complete record of its proceedings in each case and of all the evidence. The findings and the award of the claims board shall be subject to review as provided in ch. 227." Section 227.57(8) instructs a court to reverse or remand the cause when an "exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with a . . . prior agency practice . . . or is otherwise in violation of a constitutional or statutory provision." In order for a court to determine whether the Board's exercise of discretion is within these bounds, the Board must document its decision and the rationale behind it. See Reidinger v. Optometry Examining Bd., 81 Wis. 2d 292, 297-298, 260 N.W.2d 270 (1977) ("Discretion is not synonymous with

---

[5] Wisconsin Stat. § 227.03(5) states that chapter 227 "does not apply to proceedings of the claims board, except as provided in ss. 775.05(5), 775.06(7), and 775.11(2)." Section 775.05(5) relates to proceedings regarding compensation for innocent convicts——the relevant proceeding in this case. As such, chapter 227 review standards apply to the "findings" and "award" of the subject proceedings in this case. See Wis. Stat. § 775.05(5).

11

decision-making. Rather, the term contemplates a process of reasoning . . . there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth.").

¶78 This is not a new concept. We have long said that discretionary decision-making requires some documented evidence of the decision-maker's rationale. See, e.g., Arrowhead United Tchrs. Org. v. Wis. Emp. Rels. Comm'n, 116 Wis. 2d 580, 603, 342 N.W.2d 709 (1984); Madison Gas & Elec. Co. v. Pub. Serv. Comm'n of Wisconsin, 109 Wis. 2d 127, 136-137, 325 N.W.2d 339 (1982); Hacker v. State Dep't of Health & Soc. Servs., 197 Wis. 2d 441, 476-480 541 N.W.2d 766 (1995) (all evaluating discretionary determinations in the context of ch. 227 review). Documentation is the necessary implication of ch. 227 review. In order to determine whether a reasoning process is outside a decision-maker's range of discretion, inconsistent with prior practice, or in violation of the law, there must be some indication of the decision-maker's reasoning process. To decide otherwise allows discretionary decision-makers subject to review to avoid review of their decisions, thereby contravening § 227.57. Worse, it allows decision-makers to make determinations based on reasons that are well outside the bounds of rational decision-making, without any means for those negatively affected by arbitrary decisions to challenge them.

¶79 The lead opinion asserts that the Board was not required to document anything about the adequacy of the award because "the Board's decision not to make a non-required finding

12

regarding adequacy is not a 'finding' in the legal sense of the word as used in the statute." See lead op., ¶32. This is incorrect. As I have explained above, the Board is required to decide whether or not the award is adequate. And the Board's adequacy decision is clearly a "finding" that is subject to review under the plain language of the statute. See Wis. Stat. § 775.05(4) ("If the claims board finds that the amount . . . is not an adequate compensation . . . ."); Wis. Stat. § 775.05(5) (The findings and the award of the claims board shall be subject to review . . . .). Consequently, the Board must document whether or not it found the statutory maximum adequate and its rationale for that decision.

¶80 However, even if we assume for the sake of argument that the statute does not require the Board to make an adequacy determination, the lead opinion's limited reading of the word "finding"——a reading that excludes the Board's decision to avoid deciding adequacy——simply does not comport with the way the word "find" is used in the statute. The lead opinion insists that "find" is a legal term of art and is synonymous to "findings of fact," but "finding" is often used in a broader sense to mean a decision or a determination. See Find, American Heritage Dictionary of the English Language (5th ed. 2022) ("To come to a legal decision or verdict."). Wisconsin Stat. § 775.05 uses "find" in this general sense each time it describes a decision the Board makes, without regard to whether the Board is finding a fact or making a more discretionary determination, such as "find[ing] the amount which will equitably compensate the

13

petitioner, not to exceed $25,000."[6]  As such, there is no indication in the statute that the word "finding" in Wis. Stat. § 775.05(5) was meant in a limited sense to exclude some types of decisions, rather than as a general synonym for "decision" or "determination."[7]

¶81 Under a commonsensical reading of Wis. Stat. § 775.05(4), the Board is required to find whether or not the statutory maximum is adequate——a finding that clearly is subject to review under ch. 227.  Wis. Stat. § 775.05(5).  But even under a reading that allows the Board to refrain from deciding

---

[6] See Wis. Stat. § 775.05(3) ("the claims board shall find either that the evidence is clear and convincing that the petitioner was innocent of the crime . . ."); Wis. Stat. § 775.05(4) ("If the claims board finds that the petitioner was innocent and that he or she did not . . . contribute to bring about the conviction . . . , the claims board shall find the amount which will equitably compensate the petitioner, not to exceed $25,000 . . . .  Compensation awarded by the claims board shall include any amount to which the board finds the petitioner is entitled for attorney fees, costs and disbursements. If the claims board finds that the amount it is able to award is not an adequate compensation it shall submit a report . . . ." (emphasis added)).

[7] The language the lead opinion points to in Wis. Stat. § 775.06(7), "findings, conclusions, determination, and award" mirrors language used earlier in that particular section. See Wis. Stat. § 775.06(4) ("the findings, conclusions, determination, and award of, or denial thereof, shall be based on all the evidence . . . ").  Wisconsin Stat. § 775.05, by contrast, includes no such language, but instead uses the word "finding" throughout to describe each of the decisions the Board makes.

14

adequacy, the decision to refrain is still subject to review.[8] Because the Board is subject to ch. 227 review, it is required to document the rationale behind its discretionary decisions——including its decision regarding the adequacy of an award.

C. The Board Failed to Document Its Decision-Making Process.

¶82 Turning to the Board's decision here, the record is devoid of any evidence indicating the Board exercised discretion regarding the adequacy of the award. In its decision, the Board did not address whether $25,000 was adequate, but wrote only that it found Sanders innocent, and "[a]ccordingly, the Board further concludes that compensation in the amount of $25,000 shall be awarded from the Claims Board appropriation." Additionally, in its decision to deny Sanders' petition for rehearing, the Board wrote only that "the Board did not conclude that the amount which it was able to award was 'not adequate compensation.'"

¶83 Neither of those brief statements provide evidence that "discretion was in fact exercised" when the Board determined the adequacy of the award, nor do they set forth "the

_____

[8] In addition to shielding the Board from review of its decision to refrain from considering adequacy, the lead opinion effectively shields the Board from review of <u>any</u> decision not to send a report to the legislature. The Board is incentivized to say nothing, even if it actively finds that the award is adequate. As already established (and not refuted by the lead opinion), the Board's finding of adequacy is reviewable under Wis. Stat. §§ 227.03(5) & 775.05(5). However, the Board may refrain from documenting its finding of adequacy and thus evade review because the reviewing court must assume from the empty record——as the lead opinion appears to do in this case——that adequacy was not considered.

15

basis of that exercise of discretion." See Hacker, 197 Wis.2d at 478 (quoting Reidinger, 81 Wis.2d at 298). The Board's decision does not mention whether it determined the award was adequate, much less the basis for that determination. Likewise, the order denying rehearing, which stated that "the Board did not conclude that the amount which it was able to award was 'not adequate compensation'" failed to establish that an adequacy determination was made. Although a double negative often colloquially translates into the corresponding positive, the Board's use of the double negative here establishes only the negative——the Board refrained from making a decision regarding adequacy. Even accepting that the Board did determine $25,000 was adequate, the Board failed to set forth any basis for that determination in its order. Accordingly, the court of appeals was correct in remanding the matter to the Board to properly exercise its discretion as to whether $25,000 was adequate.

¶84 It bears repeating that requiring some documentation of the Board's decision-making is not simply an exercise in ensuring that the Board dot its I's and cross its T's, but instead is a matter of real substantive importance. Perhaps the Board did have a legitimate reason for not recommending a higher amount to the legislature. The problem is that we do not know the reason, or whether there was any reasoning at all. The lead opinion's decision allows the Board to evade review of determinations made on potentially illegitimate or arbitrary grounds by simply not documenting the grounds for its decision.

16

This directly contravenes the legislature's directive that the Board be subject to review. See Wis. Stat. § 775.05(5).

## IV. CONCLUSION

¶85 Sanders spent twenty-six years in prison for a crime he did not commit. To be awarded even a cent for those lost decades, he was required to clear a high bar that only 17[9] petitioners have cleared since 2000——prove to the Board by clear and convincing evidence that he was innocent. Here the lead opinion allows the Board to add insult to injury by absolving the Board of its duty to follow the legislature's directive to: (1) determine whether or not the statutory maximum is adequate; and (2) explain its reasoning such that a court can review——and Sanders can understand——the rationale behind its determination. Because the Board did not do so here, I respectfully dissent.

¶86 I am authorized to state that Justices ANN WALSH BRADLEY and REBECCA FRANK DALLET join this dissent.

---

[9] State of Wisconsin Claims Board, Innocent Convict Compensation Decisions (accessed Jun. 2, 2023), https://claimsboard.wi.gov/Pages/InnocentConvictDecisions.aspx.

17