# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2943

_____

Timmy A. Taylor; Deborah Taylor

*Plaintiffs - Appellants*

v.

Cottrell, INC.; Auto Handling Corp.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2015
Filed: July 29, 2015

_____

Before BYE and SMITH, Circuit Judges, and SCHILTZ,[1] District Judge.

_____

BYE, Circuit Judge.

Timmy A. Taylor ("Taylor") and Deborah Taylor brought this action to recover damages resulting from injuries Taylor sustained in two incidents involving a Cottrell, Inc. ("Cottrell") truck trailer.  Upon Cottrell's motion in limine, the district

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota, sitting by designation.

court excluded one of Taylor's expert witnesses, finding the doctor had entered into an impermissible contingent-fee agreement which completely undermined any testimony he might offer. The district court then found Taylor lacked sufficient evidence to create a triable issue on his neck and back injury claims without an expert opinion on damages and causation, entered summary judgment on those claims in favor of Cottrell, and stayed the remaining claims. We conclude the district court erred in excluding Taylor's expert witness and reverse.

I

On October 1, 2007, Taylor was injured while attempting to secure a vehicle on a Cottrell car-hauling trailer. He underwent medical care for his injuries, which eventually led him to Dr. James M. Odor for a surgical consultation. After an examination, Dr. Odor advised Taylor that the best chance for improvement was through surgery. On February 21, 2008, Dr. Odor operated on Taylor to complete a two-level cervical fusion. After an unsuccessful "trial program" to return to work and some further treatment, on November 6, 2009, Taylor returned to work full-time without restrictions.

On January 12, 2010, Taylor was again injured when he fell approximately ten feet from a Cottrell trailer. He was taken to the emergency room, where he underwent x-rays and a CT scan. He was eventually discharged home with some pain medication. The same month, Taylor reported to Dr. Odor with neck and back pain. After testing, Dr. Odor observed several disc protrusions and a disc desiccation. These injuries led to another complex spinal surgery with Dr. Odor in September 2012, the cost of which exceeded $450,000.

Meanwhile, Taylor commenced this action in state court on April 3, 2009, which Cottrell timely removed to federal court based on diversity jurisdiction. After Taylor suffered the second injury and underwent more treatment, he amended his

claims. While the litigation spanned over several years, the relevant events for the issues currently in dispute on appeal occurred in the span of a few months and relate to the district court's exclusion of Taylor's treating physician and expert witness (Dr. Odor) and the district court's grant of summary judgment on some claims in favor of Cottrell.

On August 9, 2013, two weeks before trial was scheduled to begin, Cottrell moved for a trial continuance, asserting it had recently uncovered copies of agreements between Taylor's counsel and Dr. Odor which evidenced an impermissible contingent-fee agreement. After a hearing on August 14, the district court granted the motion and permitted additional discovery. On December 27, 2013, Cottrell filed a motion to strike Dr. Odor's testimony, for sanctions related to the alleged failure to disclose the contingent-fee agreements, and to dismiss the entire case for fraud on the court. In its order granting Cottrell's motion to strike, the district court explained it was "dismayed at the events detailed in [the] Motion" and found there was a contingency agreement—not merely a lien on any proceeds from the litigation—which undermined Dr. Odor's interest in the case so much that the "best course of action [was] to exclude the testimony of Dr. Odor as an expert witness." Taylor v. Cottrell, No. 4:09-cv-00536-HEA, Dkt. No. 351, at 3-5 (E.D. Mo. Feb. 4, 2014). Cottrell then filed a motion to bar evidence of Taylor's damages based on the testimony of Dr. Odor or dismiss the neck and low back claims that depended on his testimony. The district court granted the motion, barring any testimony from Dr. Odor and dismissing the claims for Taylor's neck and back injuries. The district court then granted permission to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which this Court denied on May 1, 2014. Upon Cottrell's motion, the district court then severed the claims related to the neck and back injuries, entered judgment on those claims, stayed the claims related to Taylor's shoulder injuries, and certified the judgment for immediate appeal.

## II

We review a district court's exclusion of expert testimony for an abuse of discretion, see Brooks v. Union Pac. R. Co., 620 F.3d 896, 899 (8th Cir. 2010), and its findings of fact for clear error, see Jackson v. Allstate Ins. Co., 785 F.3d 1193, 1206 (8th Cir. 2015). Taylor argues the district court abused its discretion in excluding Dr. Odor as an expert witness because there was no agreement for the payment of his expert services made contingent on the outcome of the litigation, and even if there was, it did not warrant exclusion. It is difficult to determine the precise interest the district court believed existed in this case and why any bias as a result of such an interest could not be adequately addressed with the jury through cross-examination. However, the issue is immaterial because we conclude the district court erred regardless of which interest it believed existed.

The parties disagree on whether a payment for an expert witness's services made contingent on the outcome of the litigation serves to disqualify the witness. This appears to be an issue of first impression in this Court. Courts in other jurisdictions have disagreed on whether such a contingent financial interest automatically disqualifies, may serve to disqualify, or can never alone disqualify an expert witness. Compare Straughter v. Raymond, No. 08-2170 CAS (CWx), 2011 WL 1789987, at *3 (C.D. Cal. May 9, 2011) ("The Court finds that the better course of action is to exclude the testimony of expert witnesses in civil cases whose compensation is contingent on the outcome of the case."); Farmer v. Ramsay, 159 F. Supp. 2d 873, 883 (D. Md. 2001) (striking expert's reports because "witness contingency fee agreements affirmatively violate the fundamental policy of Maryland and the United States" (internal quotation marks omitted)), aff'd on other grounds, 43 F. App'x 547, 551 n.5 (4th Cir. 2002) (not deciding whether it was proper to exclude the expert report because it was unnecessary); Accrued Fin. Servs., Inc. v. Prime Retail, Inc., No. CIV.JFM-99-2573, 2000 WL 976800, at *3 (D. Md. June 19, 2000) ("Financial arrangements that provide incentives for the falsification or exaggeration

of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of the witnesses."); J & J Snack Foods, Corp. v. Earthgrains Co., 220 F. Supp. 2d 358, 367 n.8 (D.N.J. 2002) ("A contingent fee arrangement with an expert witness would be unethical, and would undermine or destroy the reliability of the survey design and execution."), with Tagatz v. Marquette Univ., 861 F.2d 1040, 1042 (7th Cir. 1988) ("It is unethical for a lawyer to employ an expert witness on a contingent-fee basis but it does not follow that evidence obtained in violation of the rule is inadmissible.  The trier of fact should be able to discount for so obvious a conflict of interest.  In any event, there was no objection to Dr. Tagatz's testifying as an expert witness, so we need not delve deeper into this intriguing subject." (internal citations omitted)); Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp., 546 F.2d 530, 539 (3d Cir. 1976) ("[I]t does not necessarily follow that any alleged professional misconduct on his part would in itself render his testimony . . . a nullity."); Milfam II LP v. Am. Commercial Lines, LLC, No. 4:05-cv-0030-DFH-WGH, 2006 WL 3247149, at *2 (S.D. Ind. Mar. 30, 2006) ("The Seventh Circuit has not held such arrangements illegal *per se* but has instead left the trier of fact to consider the credibility issues."); Valentino v. Proviso Twp., No. 01 C 557, 2003 WL 21510329, at *3 (N.D. Ill. June 26, 2003) ("Thus, the issue of Horstman's compensation and his beliefs about his compensation only affect Horstman's credibility as a witness, not the admissibility of his report and testimony.").  Because we find that no such contingent interest exists in this case, we need not further address the issue.

It is not clear from the district court's order whether the district court believed a contingent-fee agreement existed for Dr. Odor's expert witness services or for the payment of past medical services performed by Dr. Odor.  The district court broadly referenced "a contingency fee arrangement with an expert witness," and stated "payment *of* the expert," which suggest it thought the contingency was for the expert witness services—not for the payment of prior medical services.  Taylor, Dkt. No. 351, at 4.  Additionally, the only authority the district court cited in support of

exclusion was the Restatement (Third) of the Law Governing Lawyers § 117, which prohibits a lawyer from offering or *paying an expert witness* consideration contingent on the outcome of the litigation. Id. Thus, it appears the district court concluded Dr. Odor's compensation for testifying in this case was made contingent on the outcome of the litigation. However, the district court cited no evidence in the record to support such a finding and our independent review of the record has not revealed any. To the contrary, the undisputed record evidence shows that Dr. Odor was paid an hourly rate for his deposition testimony. Therefore, to the extent the district court barred Dr. Odor from testifying because payment for his expert witness services was made contingent on the outcome of the litigation, it clearly erred.

It is also possible to read the district court's order as excluding Dr. Odor based on an agreement for the payment of the past medical expenses. In its order excluding Dr. Odor, the district court held "Plaintiff's counsel entered into an agreement that Dr. Odor's *office* would not get paid if Plaintiff did not recover anything from this action." Id. at 1-2. The district court noted it was "dismayed at the events detailed in Defendant's Motion" and rejected Taylor's argument that the arrangement was merely "a lien on recovery in the event Plaintiffs do not pay Dr. Odor's fee." Id. at 4-5. To the extent the district court found an agreement that payment of Taylor's medical bills was contingent on a recovery through the litigation, it also was in error. The only evidence the parties rely on to show Dr. Odor had any interest in the case relate to three "letters of protection" and the testimony of Sandy Weber, the business manager for Dr. Odor's practice. Neither supports a finding that Taylor would not be responsible for paying his past medical expenses should he fail to recover any proceeds in this litigation.

The three "letters of protection" addressed to Dr. Odor, signed by Taylor's various attorneys, represented that Taylor wished to continue with the treatment advised by Dr. Odor even if it would not be covered by insurance and that he would guarantee the payment of the medical services through any proceeds from workers

compensation or litigation. Essentially, these letters provided a personal guarantee for the payment of medical expenses and simply reaffirmed a lien on any future recovery by Taylor. The letters themselves fail to establish that the payment of the medical services was contingent on a favorable outcome in the litigation. Stated another way, they do not demonstrate Taylor would not be responsible for paying the medical bills should he fail to recover anything.

As to Weber's testimony, we believe the district court abused its discretion in striking her supplemental affidavit submitted after her deposition which clarified and placed into context her prior testimony. We do not permit a post-deposition affidavit to contradict prior testimony in an attempt to create issues of fact. See, e.g., Popoalii v. Corr. Med. Servs., 512 F.3d 488, 498 (8th Cir. 2008) ("We have held that '[i]f testimony under oath . . . can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.'" (quoting Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983)). But an affidavit may be submitted to clarify ambiguities or confusion in deposition testimony. See City of St. Joseph, Mo. v. Sw. Bell Tel., 439 F.3d 468, 476 (8th Cir. 2006) (explaining a district court should not strike an affidavit where it seeks to "explain portions of [the] deposition testimony that were unclear" or when the "affidavit does not actually contradict [the] earlier testimony").

During her deposition, Weber testified it was standard practice for her to seek letters of protection whenever a patient is pursuing litigation or workers compensation and that she had been doing so for ten to eleven years. When asked to explain the purpose of the letters of protection, she provided that they guarantee "if the patient wins, that attorney wins, then they will pay me from the settlement. If they don't win, there's no money." She also made some statements that if Taylor failed to recover anything through workers compensation or litigation, Dr. Odor's office would not get paid. However, at no time did she make any representation that Dr. Odor had

-7-

in any way forfeited or waived his right to seek payment from Taylor. After her deposition, Weber submitted a supplemental affidavit to the district court, clarifying and putting into context her prior testimony by highlighting the difference between the practical inability to get paid should Taylor fail to recover anything and the affirmative act of forfeiting the right to seek payment. She explained that in her prior testimony she meant that, as a practical matter, should Taylor fail to recover anything, Dr. Odor's office would be unable to collect on the amount owed—not that Dr. Odor's office had given up the right to collect. We do not believe Weber's affidavit contradicted her prior testimony. Our independent review of her deposition testimony firmly convinces us that the selective quotes of some of her statements were taken out of context by Cottrell and the district court. In her supplemental affidavit, Weber sought to merely clarify her previously unclear and ambiguous testimony and place it in a context evident from the deposition transcript. Other than Weber's ambiguous deposition testimony, there is a complete lack of evidence in the record to even suggest any agreement between Dr. Odor's office and Taylor that Taylor would only be responsible for paying his medical expenses should he recover any proceeds in the litigation. Accordingly, we believe the district court abused its discretion in striking Weber's affidavit. See Baker v. Silver Oak Senior Living Mgmt. Co., L.C., 581 F.3d 684, 690 (8th Cir. 2009) (holding district court erred in striking an affidavit where it was not "directly contrary to her previous statements," and did not raise only a "sham issue").[2] With Weber's testimony properly taken in context, there is simply no evidence in the record that Taylor's payment for the past medical services was contingent on the outcome of this litigation. To the extent the district court held there existed such an interest, it also clearly erred.

---

[2]We also note that it was the hospital—not Dr. Odor's office—which placed the $450,000 lien on any litigation proceeds. Since Weber did not work for the hospital but only Dr. Odor's office, it is unclear how Taylor could avoid his obligations for the medical expenses by merely agreeing with Dr. Odor's office.

The only remaining interest Dr. Odor, himself, may have had is based on an increased likelihood of receiving payment through the personal guarantee and medical liens. But the practice of offering a personal guarantee for payment from litigation proceeds or placing a lien on potential litigation proceeds is not uncommon. See, e.g., Yorgan v. Durkin, 715 N.W.2d 160, 165 (Wis. 2006) (explaining letters of protection are "a common practice by which lawyers representing personal injury plaintiffs ensure clients will receive necessary medical treatment, even if unable to pay until the case is concluded" (internal quotation marks omitted)); Am. Family Mut. Ins. Co. v. Ward, 774 S.W.2d 135, 137 (Mo. 1989) ("If a hospital meets certain requirements and follows certain procedures it can obtain a lien on the personal injury claims of its patients."). We do not believe that such a common interest generally presents such a bias in a witness to overcome our general rule that such issues are to be considered and evaluated by the jury, nor have we found any authority holding that such an interest alone is a basis for exclusion. Cf. DiCarlo v. Keller Ladders, Inc., 211 F.3d 465, 468 (8th Cir. 2000) (explaining that bias of an expert witness is the province of the jury and can usually be addressed through effective cross-examination); Dorsey v. Greene, 922 So. 2d 121, 128 (Ala. Civ. App. 2005) (holding it was legal error to disregard testimony of treating chiropractor based on financial interest of unpaid bills); Kaplan v. Hanover Ins. Co., No. 09-ADMS-10010, 2009 WL 3069004, at *2 (Mass. App. Div. Sept. 21, 2009) (explaining that total exclusion of treating chiropractor testimony was unnecessary because he could be cross-examined regarding his "financial stake in the outcome of the case").

In summary, the district court not only failed to articulate the precise interest Dr. Odor had in the outcome of the litigation but also failed to explain why any such interest overcomes the general rule that Dr. Odor's bias and credibility should be

resolved by the jury. Therefore, on the record before us, we find an insufficient basis to exclude Dr. Odor from providing an expert opinion.[3]

III

For the reasons above, we find the district court erred in excluding Dr. Odor from testifying as Taylor's expert witness. Accordingly, we also vacate the district court's order granting summary judgment and remand for further proceedings not inconsistent with this opinion.

_____

---

[3]Cottrell asserts that the district court *could have*—not that it *must have*—barred Dr. Odor from testifying for several others reasons, including: (1) fraud on the court; (2) failure to comply with Rule 26 in disclosing him as a retained expert witness; and (3) as a discovery sanction for failing to produce the letters of protection. The district court rejected all these grounds for exclusion without any analysis and barred Dr. Odor's testimony only based on the alleged contingency agreement. We will not impose the harsh sanction of exclusion for these other alternative reasons when the district court declined to do so.

-10-