**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 10, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1515**

Cir. Ct. No. 2020CV301

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

ANDREW J. KYLLONEN,

PLAINTIFF-APPELLANT,

WISCONSIN DEPARTMENT OF HEALTH SERVICES AND
UNITEDHEALTHCARE OF WISCONSIN, INC.,

INVOLUNTARY-PLAINTIFFS,

V.

ARTISAN AND TRUCKERS CASUALTY COMPANY, PATRICIA ANN STARK,
ATHLETIC & THERAPEUTIC INSTITUTE OF MILWAUKEE, LLC, SMART
CLINIC LIMITED PARTNERSHIP AND UNITED STATES LIABILITY
INSURANCE COMPANY,

DEFENDANTS-RESPONDENTS,

AURORA MEDICAL CENTER GRAFTON LLC,

DEFENDANT.

---

APPEAL from a judgment of the circuit court for Ozaukee County: STEVEN M. CAIN, Judge. *Reversed and cause remanded with directions.*

Before Neubauer, P.J., Grogan, and Lazar, JJ.

¶1      GROGAN, J.   Andrew J. Kyllonen appeals from a judgment entered after a jury found in his favor on his personal injury claim arising from injuries he sustained in an accident.   He challenges the circuit court's pre-trial order precluding him from calling three of his treating doctors as expert witnesses.  The court barred these witnesses from testifying at trial based on its interpretation of WIS. STAT. § 907.02(2) (2023-24),[1] which precludes "testimony of an expert witness … if the expert witness is entitled to receive any compensation contingent on the outcome of any claim or case with respect to which the testimony is being offered."   Kyllonen contends this statute did not apply to the treating doctors to whom he had provided a "letter of protection" that promised to "protect any outstanding liens you may have for medical bills relating to this motor vehicle accident from any recovery obtained on Mr. Kyllonen's behalf" and that because he could not present their testimony, the court's error prevented the jury from awarding the full amount of his damages.   We agree that the circuit court erroneously interpreted and applied § 907.02(2) in precluding Kyllonen's treating doctors from testifying and that this error was not harmless.   Accordingly, we reverse and remand the matter for a new trial on damages.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

## I. BACKGROUND

¶2 Kyllonen sustained injuries following an October 2017 automobile/pedestrian accident in which Patricia Ann Stark, the driver, struck Kyllonen.[2] At some point thereafter, Kyllonen retained counsel, who referred him to Aspen Orthopedics (Aspen), where multiple doctors—Drs. Ryan Kehoe, Jonathon Printz, and Justin Peterson—ultimately provided Kyllonen with various treatments beginning in or around April 2018. Prior to Kyllonen having received treatment at Aspen, counsel provided Aspen with a "letter of protection" dated April 3, 2018, which stated the following:

> We represent Andrew Kyllonen in regards to injuries he sustained in an accident of October 10, 2017. It is our understanding he is receiving treatment from your office relating to that accident. *We agree to protect any outstanding liens you may have for medical bills relating to this motor vehicle accident from any recovery obtained on Mr. Kyllonen's behalf.* Your cooperation is greatly appreciated.

(Emphasis added.) At the time counsel sent the letter, and throughout the course of much of his treatment, Kyllonen apparently had no health insurance coverage.

¶3 Kyllonen filed a lawsuit against Stark, Artisan and Truckers Casualty Company (Stark's insurer), and various other defendants in October 2020. In March and April 2023, Stark and Artisan (collectively referred to as the Insurer) deposed Drs. Kehoe, Printz, and Peterson, all of whom provided treatment to Kyllonen while partners at Aspen. Shortly after the depositions, the Insurer filed a motion in limine seeking to preclude Kyllonen from introducing the

---

[2] We do not provide further details regarding the accident because it is not pertinent to the issue presented on appeal.

testimony of these three doctors at trial. The Insurer's motion[3] argued that WIS. STAT. § 907.02(2) prohibited Drs. Kehoe, Printz, and Peterson from testifying as expert witnesses because the outstanding medical bills Kyllonen's counsel had guaranteed to "protect" in the April 2018 letter of protection constituted "any compensation contingent on the outcome of any claim or case with respect to which the testimony is being offered." *See id.* In support of its argument, the Insurer pointed to the doctors' respective deposition testimony and claimed it established that Kyllonen's outstanding medical bills of $182,101 with Aspen were "tied to the outcome of the case[,]" thereby making their "compensation" "contingent" on any potential jury award Kyllonen received at trial. It also argued that Aspen's failure to timely submit any claims for Kyllonen's treatment to insurance made any "compensation" for treating Kyllonen "contingent on the outcome of this litigation[.]"

¶4      In response, Kyllonen argued that WIS. STAT. § 907.02(2) applies to contingency payments tied directly to compensation for *testifying* as an expert witness—not scenarios in which "a plaintiff has unpaid medical expenses" with a treatment provider the plaintiff is seeking to introduce as an expert witness. While noting "there is no case law directly on point," Kyllonen pointed to Professor Daniel D. Blinka's[4] commentary on § 907.02(2), which states in relevant part:

---

[3] Defendant United States Liability Insurance Company (USLIC), Stark's umbrella policy carrier, joined the motion. USLIC also joins the Insurer's Response Brief on appeal.

[4] Professor Blinka is a highly regarded authority on Wisconsin evidentiary standards, and our courts regularly and favorably cite his treatises and commentary. *See, e.g.*, *State v. Marinez*, 2011 WI 12, 331 Wis. 2d 568, 797 N.W.2d 399; *State v. Payano*, 2009 WI 86, 320 Wis. 2d 348, 768 N.W.2d 832; *State v. Domke*, 2011 WI 95, 337 Wis. 2d 268, 805 N.W.2d 364; *State v. Beauchamp*, 2011 WI 27, 333 Wis. 2d 1, 796 N.W.2d 780; *State v. Swope*, 2008 WI App 175, 315 Wis. 2d 120, 762 N.W.2d 725.

> Although the rule [§ 907.02(2)] clearly extends to classic contingent fee (for testimony) agreements, it should not be more broadly applied to instances where health care providers are paid later based on settlements or verdicts. Where witnesses have provided treatment and await payment, they have not exchanged testimony for fees contingent on the lawsuit's outcome. Financial inducements may always be explored through cross-examination and impeachment, especially for bias, which is never a collateral issue.

7 Daniel D. Blinka, *Wisconsin Practice: Evidence*, § 702.7 (4th ed.). Thus, Kyllonen asserted, because the Insurer failed to establish that Drs. Kehoe, Printz, and Peterson had "entered into a contingent fee agreement in exchange for their *testimony*[,]" § 907.02(2) did not apply. (Emphasis added.) Kyllonen also pointed out that his outstanding medical bills would remain regardless of the outcome at trial and that the "unpaid balances" would not "magically disappear[.]"

¶5 Attempting to discount Kyllonen's reliance on Professor Blinka's treatise, the Insurer argued that "it is the language of [WIS. STAT. § 907.02(2) that] controls" and that the statutory language "does not state it only applies to compensation for the testimony" itself but rather refers more broadly to "any compensation." Because the statutory language is so broad, it argued, it encompasses the scenario here wherein the doctors had a "vested interest" in Kyllonen's recovery at trial, particularly based on the letter of protection, which "existed before the first time" any of the doctors provided treatment. This, the Insurer said, presents a scenario that "[s]urely[] even Professor Blinka would acknowledge … constitutes an agreement to compensate the doctors for their opinions" because the doctors were "all due to recover an exorbitant sum of money if [Kyllonen] prevails in this case" given that Aspen had foregone billing insurance and had "never … attempt[ed] to collect payment" by any other means.

¶6      The circuit court heard argument on the motion in May 2023, and the Insurer reiterated its position that the three doctors it sought to preclude from testifying pursuant to WIS. STAT. § 907.02(2) were "betting on the outcome of the trial from the outset" and that payment for the treatments provided was not an "incidental recovery."  Kyllonen, in contrast, reiterated that he did not have any insurance coverage when he began receiving treatment from these doctors (although apparently he obtained insurance through the state at some point), which is why counsel had provided the letter of protection in the first place.  Kyllonen also pointed out that the letter of protection said nothing about Aspen or the doctors forfeiting their ability to collect unpaid medical bills if he was unsuccessful at trial.

¶7      Ultimately, the circuit court agreed that WIS. STAT. § 907.02(2) precluded Drs. Kehoe, Printz, and Peterson from testifying as expert witnesses at trial and granted the Insurer's motion.  Specifically, after noting it was unaware of any Wisconsin case law directly on point and that non-Wisconsin cases it had reviewed, such as *Farmer v. Ramsay*, 159 F. Supp. 2d 873 (D. Md. 2001), and *Tagatz v. Marquette University*, 861 F.2d 1040 (7th Cir. 1988), differed from the facts here because they generally addressed expert witness testimony and contingent fees in the context of ethical rule violations, the court went on to state:

> [W]hat's different in this case is that these doctors were engaged through counsel with a letter of protection before the treatment even occurred.  So that sets up a different scenario where this isn't Mr. Kyllonen accumulating fees that he either can't pay or the doctors are deciding not to submit to insurance.  And while, again, Professor Blinka is certainly the expert on evidence in Wisconsin, his reputation is really top notch here in this state, his opinions are just his opinions or commentary is just commentary.
>
> The reality is the statute we have here in question uses broad language that experts can't testify if they are entitled to receive any compensation contingent on the outcome of

> the case. And these doctors clearly are expecting that their compensation will be contingent whether they receive 182, or anything, frankly, because the statute says any compensation, is tied to the outcome of the case. And the rule doesn't say testimony for -- only for situations where there's compensation for testimony. It says any compensation.

Based on this understanding, which seemingly focused on the phrase "any compensation"—not just compensation for testifying at trial—the court held that allowing Drs. Kehoe, Printz, and Peterson to testify as experts would "run[] afoul" of § 907.02(2).[5] The court thereafter entered a written order to that effect, specifically stating that the three doctors were precluded from testifying at trial because they were "entitled to receive compensation which is contingent upon [the] outcome of the case."

¶8 Kyllonen subsequently filed a petition seeking leave to appeal the circuit court's nonfinal order precluding Drs. Kehoe, Printz, and Peterson from testifying as expert witnesses. Kyllonen asserted the appeal would satisfy all criteria set forth in WIS. STAT. § 808.03(2) and generally argued that the court had erroneously interpreted WIS. STAT. § 907.02(2) and that allowing the trial to proceed on the liability issue without allowing him "to prove causation to the jury" would be prejudicial, cause substantial harm, and waste judicial resources because he would ultimately appeal as a matter of right following trial. We denied Kyllonen's motion based on our conclusion that it did not satisfy § 808.03(2).

---

[5] After issuing its ruling, the circuit court removed the upcoming trial date, which was scheduled to begin within a matter of days, from its calendar to avoid any potential issues with different juries hearing the liability and damages issues. Doing so also had the practical effect of allowing Kyllonen to obtain different expert witnesses regarding damages if he so chose.

¶9      Following a multi-day jury trial in May 2024, the details of which are unnecessary to recount for the purpose of this appeal, the jury concluded that Stark had negligently operated her vehicle at the time of the accident, that her negligence was a cause of the accident, and that while Kyllonen was also negligent, his negligence was not a cause of the accident. Kyllonen thereafter filed a motion after verdict seeking a new trial on damages based on "errors in the trial court's pre-trial rulings that substantially prejudiced" him by barring Drs. Kehoe, Printz, and Peterson from testifying as expert witnesses at trial. Although the circuit court held a hearing on Kyllonen's motion, it noted that Kyllonen essentially raised the same arguments he had previously raised prior to trial and that his motion was, for all practical purposes, the equivalent of a motion for reconsideration—particularly because Kyllonen failed to point to a specific *trial* error or "excessiveness or inadequacy of damages awarded or newly discovered evidence." The court denied the motion—both as a motion for reconsideration and as a motion for a new trial under WIS. STAT. § 805.15's interest of justice provision—and also granted the defendants' motions for judgment on the verdict. Kyllonen appeals.

## II.  STANDARD OF REVIEW

¶10      "[W]hether to admit proffered expert testimony" "is within the circuit court's discretion[.]" *State v. Dobbs*, 2020 WI 64, ¶27, 392 Wis. 2d 505, 945 N.W.2d 609; *State v. Hogan*, 2021 WI App 24, ¶26, 397 Wis. 2d 171, 959 N.W.2d 658. "We review the circuit court's decision under [the] erroneous exercise of discretion standard," meaning "we will not reverse a circuit court's decision if the decision 'had a reasonable basis[]' and 'was made in accordance with accepted legal standards and in accordance with the facts of record.'" *Dobbs*, 392 Wis. 2d 505, ¶27 (quoting *State v. Pico*, 2018 WI 66, ¶15, 382 Wis. 2d 273,

8

914 N.W.2d 95). However, when the decision rests upon the interpretation of a statute, we are presented with a question of law reviewed de novo. ***State v. Novy***, 2013 WI 23, ¶21, 346 Wis. 2d 289, 827 N.W.2d 610 ("[S]tatutory interpretation and application … present questions of law[.]"); *see also* ***Buckett v. Jante***, 2009 WI App 55, ¶9, 316 Wis. 2d 804, 767 N.W.2d 376 ("Whether the circuit court applied the proper law is a question of law we review de novo."). If a circuit court improperly interprets the law when making the discretionary decision, it erroneously exercises its discretion. ***1325 N. Van Buren, LLC v. T-3 Grp., Ltd.***, 2006 WI 94, ¶23, 293 Wis. 2d 410, 716 N.W.2d 822.

¶11 When there has been an error "in admitting or excluding evidence[, it] does not necessarily lead to a new trial." ***Martindale v. Ripp***, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698; ***State v. Nieves***, 2017 WI 69, ¶17, 376 Wis. 2d 300, 897 N.W.2d 363. Rather, we "must conduct a harmless error analysis to determine whether the error 'affected the substantial rights of the party.'" ***Martindale***, 246 Wis. 2d 67, ¶¶30-31; WIS. STAT. § 805.18(2);[6] WIS. STAT. § 901.03.[7] "If the error did not affect the substantial rights of the party, the

---

[6] WISCONSIN STAT. § 805.18(2) provides:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of … error as to any matter of pleading or procedure, unless … after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

[7] WISCONSIN STAT. § 901.03(1) provides that:

> **(1)** EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

(continued)

9

error is considered harmless." ***Martindale***, 246 Wis. 2d 67, ¶30. "An error affects the substantial rights of a party if there is a reasonable probability of a different outcome." ***Nieves***, 376 Wis. 2d 300, ¶17 (quoting ***State v. Kleser***, 2010 WI 88, ¶94, 328 Wis. 2d 42, 786 N.W.2d 144). "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" ***Martindale***, 246 Wis. 2d 67, ¶32 (citation omitted). "An error is *not* harmless if it undermines our confidence in the outcome of the proceeding." ***State v. Echols***, 2013 WI App 58, ¶15, 348 Wis. 2d 81, 831 N.W.2d 768. "Whether an error was harmless presents a question of law this court reviews *de novo*." ***Id***.

## III. DISCUSSION

¶12　This case presents the issue of how to properly interpret WIS. STAT. § 907.02(2), which provides that: "the testimony of an expert witness may not be admitted if the expert witness is entitled to receive any compensation contingent on the outcome of any claim or case with respect to which the testimony is being offered." This is an issue of first impression as this statute has not yet been interpreted by any Wisconsin appellate court in the nearly 15 years since it was first enacted.[8]

---

**(a)** *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

**(b)** *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

[8] *See* 2011 Wis. Act 2, § 37.

¶13    Kyllonen contends the circuit court erred when it interpreted WIS. STAT. § 907.02(2) in a manner that precluded three of his treating doctors from testifying as expert witnesses at trial. He asserts that § 907.02(2) is unambiguous and that the statute's plain language establishes that the statutory exclusion applies only where an expert witness's payment for providing *testimony* is contingent on a specific outcome. He therefore says that because the payment at issue with his treating doctors was not for the act of *testifying* but rather was payment for past medical services, the payment at issue was for *non-testimonial* services and the court therefore erroneously exercised its discretion in excluding his three treating doctors' testimony.

¶14    The Insurer, to the contrary, says the circuit court properly interpreted the statute and argues that WIS. STAT. § 907.02(2)'s plain language is clear and unambiguous and that the statute's reference to "any compensation" is broad enough to encompass not only a witness's compensation for testifying as a witness but that it also applies when there is an outstanding balance for services the proposed expert witness rendered to the party proponent, particularly where, as here, a letter of protection was provided.[9] According to the Insurer, use of the word "*any*" in front of "compensation" broadens the scope and sweeps in payments such as outstanding medical bills referenced in the letter of protection.

---

[9] The Wisconsin Association for Justice filed an amicus brief in which it largely asserted that letters of protection do not constitute contingent compensation agreements within the meaning of WIS. STAT. § 907.02(2) and urged this court to reject the Insurer's broad interpretation. It indicated that "a letter of protection is not a contingent compensation agreement because the injured plaintiff continues to owe the testifying physician for the medical services rendered *even if the case is unsuccessful*." It points out that "a letter of protection does not provide compensation 'dependent' on the outcome of the case – to the contrary, compensation is owed *regardless of the outcome*. The benefit a letter of protection offers to the medical provider is ease of collection."

It therefore argues the statute should be interpreted to include payment for services other than the provision of *testimony*—including *non-testimonial* services previously rendered but not yet paid.

¶15    Both Kyllonen and the Insurer, despite their differing interpretations, assert that WIS. STAT. § 907.02(2) is unambiguous.    These competing interpretations, however, do not render the statute inherently ambiguous.[10]  *See* ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶47, 271 Wis. 2d 633, 681 N.W.2d 110.  Moreover, it is axiomatic that in interpreting statutes, courts must construe the plain meaning of a statute in a way that "avoid[s] absurd or unreasonable results." *See **id.***, ¶46.  To resolve this dispute, we must turn to ***Kalal***'s well-known and oft-repeated statutory interpretation framework.

¶16    "As with every statutory interpretation case, we begin with the statutory text." ***State v. Brott***, 2023 WI App 45, ¶12, 409 Wis. 2d 96, 996 N.W.2d 78, *review denied*, 2024 WI 12, 6 N.W.3d 875.  When reviewing statutory language, appellate courts "ascertain and apply the plain meaning of the statutes as adopted by the legislature." ***White v. City of Watertown***, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61.  "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the "language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Kalal***, 271 Wis. 2d 633, ¶¶45-46 (citation omitted) ("Context is important to meaning.  So, too, is the

---

[10] A statute is not ambiguous simply because attorneys and judges offer competing interpretations.  *See **Bruno v. Milwaukee County***, 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656.  "A statute is ambiguous if it is susceptible of two or more 'equally sensible interpretations.'" ***Id.***, ¶21 (citation omitted).

structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). "To determine common and approved usage, we consult dictionaries." *Sanders v. State of Wis. Claims Bd.*, 2023 WI 60, ¶14, 408 Wis. 2d 370, 992 N.W.2d 126; *State v. McKellips*, 2016 WI 51, ¶32, 369 Wis. 2d 437, 881 N.W.2d 258. "To determine the meaning of legal terms of art, we consult legal dictionaries." *Sanders*, 408 Wis. 2d 370, ¶14.

¶17 A statute is unambiguous if the foregoing interpretative process "'yields a plain, clear statutory meaning[.]'" *Kalal*, 271 Wis. 2d 633, ¶46 (citation omitted). If a statute "is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶47. "[D]isagreement about the statutory meaning" "is not enough" to render a statute ambiguous. *Id.* Rather, "the test for ambiguity examines the" statutory language "to determine whether 'well-informed persons *should have* become confused,' that is, whether the statutory … language *reasonably* gives rise to different meanings." *Id.* (citation omitted; omission in original).

¶18 Our analysis starts with the statutory language. We first determine the plain meaning of the statute's key terms. Here, the statute does not define the key terms—"compensation" and "contingent"—but both words are common, ordinary words. Thus, we give these words their "common, ordinary, and accepted" meanings, *id.*, and we will consult a dictionary to help determine the

13

plain meaning of both terms, *see **Sanders***, 408 Wis. 2d 370, ¶14 (citations omitted).

¶19    "Compensation" means payment.  Common dictionary definitions support this plain meaning.  *See Compensation*, The Merriam-Webster Dictionary (defining "compensation" as "payment, remuneration");[11] *Compensation*, The American Heritage Dictionary of the English Language (defining "compensation" as "[s]omething, such as money, given or received as payment or reparation, as for a service or loss.").[12]

¶20    "Contingent" means dependent upon.  The same common dictionaries referenced above support this plain meaning.  *See Contingent*, The Merriam-Webster Dictionary (defining "contingent" as meaning "dependent on or conditioned by something else"; "likely but not certain to happen: possible"; "happening by chance or unforeseen causes");[13] *Contingent*, The American Heritage Dictionary of the English Language ("Liable but not certain to occur; possible[.]"; "Dependent on other conditions or circumstances; conditional[.]"; "Happening by or subject to chance or accident; unpredictable[.]").[14]

---

[11] *Compensation*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compensation (last visited Oct. 9, 2025) (second definition; formatting altered).

[12] *Compensation*, The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=compensation (last visited Oct. 9, 2025) (second definition).

[13] *Contingent*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/contingent (last visited Oct. 9, 2025) (first, second, and fourth definitions; some formatting altered).

[14] *Contingent*, The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=contingent (last visited Oct. 9, 2025) (first, second, and third definitions).

¶21 Having determined the meaning of "compensation" and "contingent," we next consider these terms "in the context in which ... [they] are used" and interpret them not in isolation, but as a part of the whole statute. ***James v. Heinrich***, 2021 WI 58, ¶20, 397 Wis. 2d 517, 960 N.W.2d 350 (quoting ***Kalal***, 271 Wis. 2d 633, ¶46). As noted, WIS. STAT. § 907.02(2) precludes an expert witness from testifying if the "witness is entitled to receive *any compensation contingent on the outcome* of any claim or case *with respect to which the testimony is being offered*." *Id.* (emphases added). Based on the definitions set forth above, § 907.02(2) precludes an expert witness from testifying if the witness receives payment that depends upon the party proponent obtaining a specific, pre-determined outcome in regard to a specific claim at issue or the case at hand as a whole. Significantly, the statutory language that follows these key terms qualifies them—it requires that the "compensation" be "contingent on the outcome" "with respect *to*" the "*testimony*" the witness provides. *See* § 907.02(2) (emphases added). Focusing only on the terms *any compensation* and *contingent on the outcome* without applying the qualification erroneously broadens the statutory meaning. When these terms are read within the context of the statute's qualifying language, however, the meaning is properly narrowed. Stated otherwise, to preclude an expert witness from testifying under § 907.02(2), there must be an agreement that the expert witness is exchanging the testimony for *payment for the testimony itself* that will only occur if the lawsuit resolves in the proponent's favor.

¶22 Adopting a broad reading of WIS. STAT. § 907.02(2), to the contrary, would lead to an absurd and unreasonable result because doing so would necessarily exclude the testimony of any treating doctor who provided medical treatment to a plaintiff based solely on the fact that outstanding bills remained for that medical service. Under such a broad interpretation, *any* service provider's

outstanding bills could constitute "compensation" that is "contingent" on the outcome of a case if a successful outcome would ultimately increase the party's ability to satisfy his financial obligations for the non-testimonial services rendered. Thus, whether an expert witness could testify would turn on whether a party proponent had the ability to pay for non-testimonial related services incurred prior to trial.[15]

¶23    Our conclusion that the narrower reading of WIS. STAT. § 907.02(2) is the correct reading aligns with the basic principle that we construe statutes to avoid unreasonable interpretations that lead to absurd results.  This is so because following the narrow interpretation to its logical end leads to the reasonable conclusion that the statute does not apply to treating doctors who testify on behalf of a patient when the *payment* is for unpaid medical bills the patient is obligated to pay regardless of the outcome of the lawsuit.  We therefore conclude that Kyllonen presents the only reasonable interpretation and that § 907.02(2) precludes an expert witness from testifying only when the expert witness's compensation *for testifying* is dependent upon the party proponent achieving a specific, pre-determined outcome in regard to either a claim the expert witness is testifying about or in regard to the specific matter, taken as a whole, in which the

---

[15] This is not limited, of course, to expert witnesses who have provided medical treatment, as WIS. STAT. § 907.02(2) applies to all proposed expert witnesses.  For example, just as a broad interpretation could preclude a party's treating physician from testifying, it could likewise apply to preclude any proposed expert witness who had previously provided a non-testimonial service, such as if a homeowner had hired an engineer to resolve issues with a home's foundation and sought to introduce the engineer as an expert witness while bills for the engineering services remained outstanding.

expert witness testifies.[16]  This interpretation disincentivizes a party from seeking potentially biased expert witness testimony while still allowing an expert witness who has provided a non-testimonial service to testify as an expert witness.

¶24    Having determined the plain meaning interpretation of WIS. STAT. § 907.02(2), we next apply that meaning to the circumstances in this appeal.  Here, Drs. Kehoe, Printz, and Peterson were Kyllonen's treating doctors who provided medical services, and the letter of protection guaranteeing the medical bills for those services functioned, in essence, as a medical lien.  The letter did not waive Kyllonen's responsibility for the medical bills, and there was no agreement that these doctors would be paid a contingent fee only if they testified at trial.

¶25    In excluding these doctors' testimony at trial, the circuit court interpreted WIS. STAT. § 907.02(2) too broadly.  Specifically, it did not limit its consideration to compensation for the doctors' *trial testimony itself* but instead relied on the letter of protection that was, for all practical purposes, a lien on the amounts Kyllonen was obligated to pay regardless of the outcome at trial and regardless of whether Aspen or any of the individual doctors actively sought payment for any outstanding balance following trial.[17]  We agree with Professor Blinka that § 907.02(2) precludes "classic contingent fee (for testimony) agreements[.]"  *See* 7 Blinka, *Wisconsin Practice: Evidence*, § 702.7.  But, it

---

[16] WISCONSIN STAT. § 907.02(2) cannot, of course, be read so narrowly as to render payment for an expert witness's testimony sufficient to preclude that witness from testifying at all.  Rather, as the statutory language makes clear, § 907.02(2) applies only where the expert witness's compensation for testifying is tied directly to that party obtaining a specific outcome.

[17] *See **Taylor v. Cottrell, Inc.***, 795 F.3d 813, 818 (8th Cir. 2015) (noting that the letters of protection were "a personal guarantee for the payment of medical expenses and simply reaffirmed a lien on any future recovery").

"should not be more broadly applied to instances where health care providers are paid *based on settlements or verdicts*." ***Id.*** (emphasis added). Any financial inducements arising from the letter of protection for these treating doctors may "be explored through cross-examination and impeachment especially for bias[.]" *See id.*[18]

¶26 Put simply, the fact that Kyllonen's success at trial may ultimately have impacted his ability to pay his outstanding medical bills did not transform his financial obligations into contingency payments or contingent compensation within the meaning of WIS. STAT. § 907.02(2). Moreover, the letter of protection did not state that Aspen and/or the doctors would be paid *only if* Kyllonen succeeded at trial, but rather that counsel would "protect any outstanding liens … for medical bills relating to this motor vehicle accident from any recovery obtained on Mr. Kyllonen's behalf." The letter of protection did not extinguish Kyllonen's liability for the medical services if the litigation was unsuccessful.

---

[18] The Insurer's argument that the statute applies rests in part on the following question and answer during Dr. Peterson's pre-trial deposition:

> Q [Insurer's counsel]: So Aspen Orthopedic's recovery is contingent on the outcome of this litigation, fair?
>
> A [Dr. Peterson:] Fair.

The Insurer contends this exchange confirms that "the Aspen Trio's compensation was *contingent* on the jury's verdict." (Emphasis added.) The Insurer's reliance on this exchange, however, is misplaced and overstated for multiple reasons. First, it was *counsel*—not Dr. Peterson—who introduced the specific statutory word "contingent" during the deposition. Second, even if Dr. Peterson, or any of the other doctors, specifically described the payment for treatment services as "contingent," the colloquial use of a word does not inherently define a word used in a legal context. Third, even if Dr. Peterson or any of the other doctors initiated the use of the word "contingent" to describe the nature of the payment for their *treatment* services, it would not alter our analysis here because, as explained, WIS. STAT. § 907.07(2) applies to contingent payment for testifying, not any type of payment for the underlying service.

18

¶27 Based on the foregoing, we conclude the circuit court incorrectly interpreted the statute and that as a result, it erroneously exercised its discretion when it granted the Insurer's motion to preclude Drs. Kehoe, Printz, and Peterson from testifying as expert witnesses at trial. Having determined the court erred in its interpretation and application of WIS. STAT. § 907.02(2), we must next determine whether its decision to exclude the testimony of Drs. Kehoe, Printz, and Peterson was harmless error.[19]

¶28 Having reviewed the Record, the parties' arguments, and the applicable law, we conclude the circuit court's error was not harmless because the exclusion of these doctors impacted Kyllonen's ability to establish his post-November 9, 2017 damages.[20] Although the Insurer suggests that Kyllonen could have introduced other expert witnesses, it is difficult to conceive of more potentially relevant and necessary witnesses than those medical professionals who actually treated him in the period following November 9, 2017. Additionally, as Kyllonen notes, because the jury awarded him less than what the Insurer offered to settle the matter prior to trial, WIS. STAT. § 807.01(1), which effectively decreased his recovery, applied. Had Drs. Kehoe, Printz, and Peterson been allowed to testify, Kyllonen conceivably could have been awarded more than what was

---

[19] The Insurer complains that "Kyllonen raises an issue not stated in his docketing statement, that the trial court failed to conduct a harmless error analysis." Regardless of whether Kyllonen specifically referenced harmless error analysis in his docketing statement, the harmless error analysis is an inherent part of our review when we conclude a circuit court erroneously applied the law in regard to an otherwise discretionary decision regarding the admission or exclusion of evidence. *See* **Martindale v. Ripp**, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698; **State v. Nieves**, 2017 WI 69, ¶17, 376 Wis. 2d 300, 897 N.W.2d 363.

[20] This date does not appear to be in dispute.

19

offered and avoided § 807.01(1)'s application. Accordingly, Kyllonen is entitled to a new trial on his post-November 9, 2017 damages.

## IV. CONCLUSION

¶29 While the legislature certainly could have worded WIS. STAT. § 907.02(2) more clearly, for the reasons set forth above, we conclude the only reasonable interpretation of the statute—the interpretation our statutory framework requires that we adopt—is a narrow one, and we are therefore satisfied that the "contingent" "compensation" referred to in § 907.02(2) relates only to payment to an expert witness that is: (1) specifically tied to providing *testimony*; and (2) dependent on the party proponent's ultimate success in the matter. Stated otherwise, § 907.02(2) precludes an expert witness from testifying on behalf of a party proponent if the witness will only be paid for his testimony if the party proponent obtains a positive (or otherwise favorable) outcome in the lawsuit. Adopting the broad interpretation the Insurer presents, which could cover the letter of protection at issue in this case, would be unreasonable and lead to absurd results.

¶30 Here, the circuit court erroneously construed WIS. STAT. § 907.02(2) as applying more broadly to circumstances where expert witnesses had not yet been paid for medical treatment provided, and it therefore erroneously exercised its discretion in precluding Drs. Kehoe, Printz, and Peterson from testifying at trial based on the outstanding medical bills and letter of protection. Because this error impacted Kyllonen's substantial rights as to his ability to establish damages stemming from injuries he sustained, the error was not harmless, and Kyllonen is therefore entitled to a new trial on damages. We reverse the judgment as to

20

damages and remand the matter for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

Recommended for publication in the official reports.